## ACCIDENT INSURANCE COMPANY *v.* CRANDAL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

Submitted December 21, 1886. — Decided March 7, 1887.

The refusal of the court to instruct the jury, at the close of the plaintiff's evidence, that he is not entitled to recover, cannot be assigned for error, if the defendant afterwards introduces evidence.

A policy of insurance against " bodily injuries, effected through external, accidental and violent means," and occasioning death or complete disability to do business ; provided that " this insurance shall not extend to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by suicide, or self-inflicted injuries ; " covers a death by hanging one's self while insane.

Statements in an application for a policy of insurance, expressing the applicant's understanding of what will be the effect of the insurance, cannot control the legal construction of the policy afterwards issued and accepted, although the application warrants the facts stated therein to be true, and the policy is expressed to be made " in consideration of the warranties made in the application."

THIS was an action against an accident insurance company upon a policy beginning thus :

" In consideration of the warranties made in the application for this insurance, and of the sum of fifty dollars, this company hereby insures Edward M. Crandal, by occupation, profession or employment a president of the Crandal Manufacturing Company," in the sum of ten thousand dollars for twelve months, ending May 23, 1885, payable to his wife, the original plaintiff, " within thirty days after sufficient proof that the insured at any time within the continuance of this policy shall have sustained bodily injuries, effected through external, accidental and violent means, within the intent and meaning of this contract and the conditions hereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof ; or if the insured shall sustain bodily injuries by means as aforesaid, which shall, independently of all other causes, immediately and

wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured, then, on satisfactory proof of such injuries, he shall be indemnified against loss of time caused thereby in the sum of fifty dollars per week for such period of continuous total disability as shall immediately follow the accident and injuries as aforesaid, not exceeding, however, twenty-six consecutive weeks from the time of the happening of such accident."

Then followed certain conditions, the material part of which was as follows: "Provided always, that this insurance shall not extend to hernia, nor to any bodily injury of which there shall be no external and visible sign; nor to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by the taking of poison, or by any surgical operation or medical or mechanical treatment; and no claim shall be made under this policy when the death or injury may have been caused by duelling, fighting, wrestling, unnecessary lifting, or by over-exertion, or by suicide, or by freezing, or sunstroke, or self-inflicted injuries."

The application was signed by the assured, and began as follows:

"The undersigned hereby applies for a policy of insurance against bodily injuries effected through external and accidental violence, said policy to be based upon the following statement of facts, which I hereby warrant to be true."

The rest of the application consisted of fifteen numbered paragraphs, stating the name, age, residence and occupation of the applicant, the amount, term and payee of the policy applied for; affirming that he had never been "subject to fits, disorders of the brain, or any bodily or mental infirmity," that he had not "in contemplation any special journey or any hazardous undertaking," and that "his habits of life are correct and temperate;" and expressing his understanding of the effect of the insurance in several particulars; the last of which was as follows:

"15. I am aware that this insurance will not extend to hernia, nor to any bodily injury of which there shall be no

external and visible sign, nor to any bodily injury happening directly or indirectly in consequence of disease, nor to death or disability caused wholly or in part by bodily infirmities or by disease, or by the taking of poison, or by any surgical operation or medical or mechanical treatment, nor to any case except when the accidental injury shall be the proximate and sole cause of disability or death."

The assured died July 7, 1884; and the plaintiff soon afterwards gave to the defendant written notice and proofs of the death, which stated that the assured, while temporarily insane, hanged himself with a pair of suspenders attached to a doorknob in his bedroom. At the trial, the plaintiff introduced evidence that the death of the assured was caused by strangulation from his so hanging himself; and, against the defendant's objection and exception, was permitted to introduce evidence tending to show that he was insane at the time. At the close of the plaintiff's evidence, the defendant moved the court to instruct the jury that under the law and the evidence in the case the plaintiff was not entitled to recover. The court overruled the motion, and the defendant excepted. The defendant then introduced evidence, and the case was argued to the jury.

The jury, under instructions to which no exception was taken, and in answer to specific questions from the court, returned a special verdict that Edward M. Crandal made the application; that the defendant issued the policy; that the premiums were fully paid, and the policy was in force at the time of his death; that he hanged himself on July 7, 1884, and thereof died on the same day; that he was insane at the time of his act of self-destruction; and that due notice and proof of death were given to the defendant; and, according to what, upon these facts, the opinion of the court in matter of law might be, found for the plaintiff in the full amount of the policy, or for the defendant.

The court overruled a motion for a new trial, and rendered judgment on the verdict for the plaintiff. 27 Fed. Rep. 40. The defendant sued out this writ of error.

*Mr. Emerson B. Tuttle* for plaintiff in error cited: *Mallory* v. *Travellers' Ins. Co.*, 47 N. Y. 52; *Providence Ins. Co.* v. *Martin*, 32 Maryland, 310; *North American Ins. Co.* v. *Burroughs*, 69 Penn. St. 43; *Pollock* v. *United States Accident Association*, 102 Penn. St. 230; *Schneider* v. *Provident Ins Co.*, 24 Wis. 28; *Bayless* v. *Travellers' Ins. Co.*, 14 Blatchford, 143; *Life Ins. Co.* v. *Terry*, 15 Wall. 580; *Gay* v. *Union Ins. Co.*, 9 Blatchford, 142; *Breasted* v. *Farmers' Loan & Trust Co.*, 8 N. Y. 299 [*S. C.* 59 Am. Dec. 482]; *Connecticut Ins. Co.* v. *Groom*, 86 Penn. St. 92; *Nimick* v. *Mutual Benefit Ins. Co.*, 10 Amer. Law Reg. (N. S.) 101; *Estabrook* v. *Union Ins. Co.*, 54 Maine, 224; *St. Louis Ins. Co.* v. *Graves*, 6 Bush, 268; *Insurance Co.* v. *Tweed*, 7 Wall. 44; *Ins. Co.* v. *Transportation Co.*, 12 Wall. 194: *Winspear* v. *Accident Ins. Co.*, 6 Q. B. D. 42; *Brady* v. *Northwestern Ins. Co.*, 11 Mich. 425; *McCarthy* v. *Travellers' Ins. Co.*, 8 Bissell, 362; *Peters* v. *Warren Ins. Co.*, 14 Pet. 99; *General Ins. Co.* v. *Sherwood*, 14 How. 351; *St. John* v. *American Ins. Co.*, 11 N. Y. 516; *Strong* v. *Sun Ins. Co.*, 31 N. Y. 103; *Lewis* v. *Springfield Ins. Co.*, 10 Gray, 159; *Montoya* v. *London Assurance Co.*, 6 Exch. 451; *De Gogorza* v. *Knickerbocker Ins. Co.*, 65 N. Y. 232.

*Mr. George C. Fry* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The refusal of the court to instruct the jury, at the close of the plaintiff's evidence, that she was not entitled to recover, cannot be assigned for error, because the defendant at the time of requesting such an instruction had not rested its case, but afterwards went on and introduced evidence in its own behalf. *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700; *Bradley* v. *Poole*, 98 Mass. 169. The subsequent instructions to the jury were not excepted to. No error is assigned in the previous rulings upon evidence, except in the admission, against the defendant's objection and exception, of evidence tending to prove the insanity of the assured. The only other matter open upon this record is whether the judgment for the plaintiff is supported by the special verdict, which finds that, while the

policy was in force, the assured died by hanging himself, being at the time. insane, and that due notice and proof of death were afterwards given.

The single question to be decided therefore is, whether a policy of insurance against "bodily injuries, effected through external, accidental and violent means," and occasioning death or complete disability to do business; and providing that "this insurance shall not extend to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by suicide, or self-inflicted injuries;" covers a death by hanging one's self while insane.

The decisions upon the effect of a policy of life insurance, which provides that it shall be void if the assured "shall die by suicide," or "shall die by his own hand," go far towards determining this question. This court, on full consideration of the conflicting authorities upon that subject, has repeatedly and uniformly held that such a provision, not containing the words "sane or insane," does not include a self-killing by an insane person, whether his unsoundness of mind is such as to prevent him from understanding the physical nature and consequences of his act, or only such as to prevent him, while foreseeing and premeditating its physical consequences, from understanding its moral nature and aspect. *Life Ins. Co.* v. *Terry*, 15 Wall. 580 ; *Bigelow* v. *Berkshire Ins. Co.*, 93 U. S. 284 ; *Insurance Co.* v. *Rodel*, 95 U. S. 232 ; *Manhattan Ins. Co.* v. *Broughton*, 109 U. S. 121. In the last case, which was one in which the assured hanged himself while insane, the court, repeating the words used by Mr. Justice Nelson, when Chief Justice of New York, said that "self-destruction by a fellow-being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used by him for the purpose," and "was no more his act, in the sense of the law, than if he had been impelled by irresistible physical power." 109 U. S. 132; *Breasted* v. *Farmers' Loan & Trust Co.*, 4 Hill, 73. In a like case, Vice Chancellor Wood (since Lord Chancellor Hatherley) observed, that the deceased was "subject to that which is really just as much an accident as if he had fallen from the

top of a house." *Horn* v. *Anglo-Australian Ins. Co.*, 30 Law Journal (N. S.) Ch. 511; *S. C.* 7 Jurist (N. S.) 673. And in another case, Chief Justice Appleton said, that "the insane suicide no more dies by his own hand than the suicide by mistake or accident," and that, under such a policy, "death by the hands of the insured, whether by accident, mistake, or in a fit of insanity, is to be governed by one and the same rule." *Eastabrook* v. *Union Ins. Co.*, 54 Maine, 224, 227, 229.

Many of the cases cited for the plaintiff in error are inconsistent with the settled law of this court, as shown by the decisions above mentioned.

In this state of the law, there can be no doubt that the assured did not die "by suicide," within the meaning of this policy; and the same reasons are conclusive against holding that he died by "self-inflicted injuries." If self-killing, "suicide," "dying by his own hand," cannot be predicated of an insane person, no more can "self-inflicted injuries;" for in either case it is not his act.

Nor does the case come within the clause which provides that the insurance shall not extend to "death or disability, which may have been caused wholly or in part by bodily infirmities or disease."

If insanity could be considered as coming within this clause, it would be doubtful, to say the least, whether, under the rule of the law of insurance which attributes an injury or loss to its proximate cause only, and in view of the decisions in similar cases, the insanity of the assured, or anything but the act of hanging himself, could be held to be the cause of his death. *Scheffer* v. *Railroad Co.*, 105 U. S. 249, 252; *Trew* v. *Railway Passengers' Assurance Co.*, 5 H. & N. 211, and 6 H. & N. 839, 845; *Reynolds* v. *Accidental Ins. Co.*, 22 Law Times (N. S.) 820; *Winspear* v. *Accident Ins. Co.*, 42 Law Times (N. S.) 900; affirmed, 6 Q. B. D. 42; *Lawrence* v. *Accidental Ins. Co.*, 7 Q. B. D. 216, 221; *Scheiderer* v. *Travellers' Ins. Co.*, 58 Wisconsin, 13.

But the words "bodily infirmities or disease" do not include insanity. Although, as suggested by Mr. Justice Hunt in *Life Ins. Co.* v. *Terry*, 15 Wall. 589, insanity or unsoundness

·of mind often, if not always, is accompanied by, or results from, disease of the body, still, in the common speech of mankind, mental are distinguished from bodily diseases. In the phrase " bodily infirmities or disease," the word "bodily" grammatically applies to " disease," as well as to " infirmities;" and it cannot but be so applied, without disregarding the fundamental rule of interpretation, that policies of insurance are to be construed most strongly against the insurers who frame them. The prefix of " bodily " hardly affects the meaning of " infirmities," and it is difficult to conjecture any purpose in inserting it in this proviso, other than to exclude mental disease from the enumeration of the causes of death or disability to which the insurance does not extend.

In the argument for the plaintiff in error, some stress was laid on the fact that the concluding paragraph of the application differs in form of expression, so as to include mental as well as bodily diseases. It is by no means clear that this is so; but if it were, it would not affect the case. The whole application is not made part of the contract, and the only mention of it in the policy is in the opening words, " In consideration of the warranties made in the application for this insurance." This does not include all the statements in the application, but only those which are warranties. Some of them may be; others clearly are not. The statements as to the age, occupation, previous state of health and present habits of the assured, and as to his other insurance, may be warranties on his part. Those as to the amount, terms and payee of the policy applied for, certainly are not. The statements expressing his understanding of what will be the effect of the insurance are statements not of fact, but of law, and cannot control the legal construction of the policy afterwards issued and accepted.

The death of the assured not having been the effect of any cause specified in the proviso of the policy, and not coming within any warranty in the application, the question recurs whether it is within the general words of the leading sentence of the policy, by which he is declared to be insured " against bodily injuries effected through external, accidental and violent means." This sentence does not, like the proviso, speak

of what the injury is "caused by;" but it looks only to the "means" by which it is effected. No one doubts that hanging is a violent means of death. As it affects the body from without, it is external, just as suffocation by drowning was held to be, in the cases of *Trew*, *Reynolds* and *Winspear*, above cited. And, according to the decisions as to suicide under policies of life insurance, before referred to, it cannot, when done by an insane person, be held to be other than accidental.

The result is, that the judgment of the Circuit Court in favor of the plaintiff was correct, and must be

*Affirmed.*