# CONNECTICUT MUTUAL LIFE INSURANCE COMPANY v. AKENS.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 100. Argued and submitted November 22, 23, 1893. — Decided December 4, 1893.

A policy of life insurance, payable in " thirty days after due notice and satisfactory evidence of death " and excepting this risk: " Suicide. — The self-destruction of the insured, in any form, except upon proof that the same is the direct result of disease or of accident occurring without the voluntary act of the insured," covers the case of the insured's death as the direct result of taking poison when his mind is so far deranged as to be unable to understand the moral character of his act, even if he does understand its physical consequences; and it is sufficient to prove this at the trial, without stating it in the preliminary proof of death.

THIS was an action of assumpsit, brought January 14, 1888, by the executor of Archibald O. Smith, both citizens of Pennsylvania, against a life insurance company, a corporation of Connecticut, upon a policy of insurance, dated January 14, 1887, on Smith's life in the sum of $10,000, payable in " thirty days after due notice and satisfactory evidence " of his death, and upon the express conditions that " the following risks are not assumed by this company under this contract," and that " in each and every of the foregoing cases this policy shall become and be null and void." One of those risks and cases was as follows :

" Suicide. — The self-destruction of the insured, in any form, except upon proof that the same is the direct result of disease or of accident occurring without the voluntary act of the insured."

The declaration, after setting out the policy, alleged that Smith died on February 23, 1887, having paid all the premiums and complied with all the requirements of the policy; and that on March 16, 1887, good and sufficient proof of his death was made to the defendant.

The defendant pleaded non-assumpsit, with an affidavit of defence that Smith's death was a self-destruction or suicide, the direct result of laudanum poison administered by him to himself for the purpose and with the effect of causing his death, and contrary to the provision of the policy.

The plaintiff filed a replication, denying these allegations, and alleging that, if Smith's death was a self-destruction, it was the direct result of disease or of accident occurring without his voluntary act, and without any purpose or intention of self-destruction or suicide, and his reasoning faculties at the time of taking the poison were so far impaired that he was not able to understand the moral character, or the nature, consequence, and effect of the act he was about to commit, and it was not contrary to the provisions of the policy.

At the trial, the plaintiff gave in evidence the policy, and formal proof of death, as alleged in the declaration, and rested his case. The defendant then introduced evidence tending to support the defence pleaded. The plaintiff then introduced evidence tending to show that Smith's reasoning faculties at the time he took the poison were so far impaired that he was not able to understand the moral character, and the nature, effect, and consequence of the act he was about to commit; but, other than this, offered no evidence tending to show that his death was the direct result of disease or of accident occurring without his voluntary act.

Upon this evidence, the defendant requested the court to instruct the jury as follows:

"First. If the jury believe from the evidence in the case that Smith, the insured, destroyed his own life, and that at the time of the self-destruction he had sufficient capacity to understand the nature of the act which he was about to commit and the consequences which would result from it, then and in that case the plaintiff cannot recover on the policy sued on in this case.

"Second. If the jury believe from the evidence that the self-destruction of the said Smith was intended by him, he having sufficient capacity at the time to understand the nature of the act which he was about to commit and the consequences

which would result from it, then and in that case it is wholly immaterial in the present case that he was impelled thereto by insanity which impaired his sense of moral responsibility and rendered him to a certain extent irresponsible for his action.

"Third. If the jury believe from the evidence that Smith's life was ended February 23, 1887, by means of laudanum poison administered by himself to himself, the plaintiff cannot recover on the policy sued upon in this case, unless the jury believe also from the evidence that the self-destruction aforesaid of said Smith was the direct result of disease or of accident occurring without his voluntary action.

"Fourth. Under all the evidence in this case, the verdict of the jury should be for the defendant."

The court declined to give the first, second, and fourth instructions requested, and upon the third request instructed the jury as follows:

"The third point is affirmed, with this exception: that if the act of self-destruction was the result of insanity, and was with suicidal intent, and the mind of the insured was so far deranged as to have made him incapable of using a rational judgment in regard to the act he was about to commit, the defendant is liable; but if he was impelled to the act by an insane impulse, which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties on the act he was about to commit, the defendant is liable. If from the evidence you believe that the insured, though excited or angry or depressed in mind from any cause, formed the determination to take his own life, because in the exercise of his usual reasoning faculties he preferred death to life, then the defendant is not liable."

To this qualification of the third instruction, as well as to the refusal to give each of the other instructions requested, the defendant excepted, and, after verdict and judgment for the plaintiff for the amount of the policy, sued out this writ of error.

*Mr. George W. Guthrie* for plaintiff in error.

The phrase "self-destruction in any form," used in the policy, is not merely the equivalent of suicide, but covers every case of self-killing, whether felonious or otherwise. If the death of the insured was brought about in the manner alleged, no recovery could be had, even though his mental condition was such as described by the court, unless it was the direct result of disease (the opium having been self-administered with the intention of destroying his life, it could not be accidental), and unless proof thereof was furnished to the company before suit brought, or at least produced at the trial of the case.

If by the expression "self-destruction in any form," the parties meant only suicide or felonious self-killing, then the words which follow have no significance or effect. A suicide could not be the result of disease or of accident occurring without the voluntary act of the insured. Therefore, no proof that it was such could be produced. Self-killing by an insane man, or by accident, is not suicide, and to interpret this provision so that it excludes suicide on proof that it is not suicide, is to make it without sense.

It follows, therefore, that the context in which the phrase is used clearly shows that by it the parties themselves intended something more than suicide only. It is also clear that the only other sense in which it could have been used was the generic one, meaning thereby any case of self-killing, whether felonious or otherwise. And therefore that it was used in that sense, and as the word is not a technical one and has never received a technical interpretation, the meaning which the parties themselves attached to it must prevail. *Bigelow* v. *Berkshire Life Ins. Co.*, 93 U. S. 284.

The word "self-destruction" is a generic word, and has never been held to have only a limited technical meaning, as the word "suicide" has. It belongs to the same class as the word "homicide," which includes every mode by which the life of one man is taken by the act of another, whether sane or insane, by intention or by accident, feloniously or innocently. (See the definition in Worcester, Webster, The Century, and the Encyclopædia.)

It is apparent, therefore, that when correctly used, the word

"self-destruction" does not of itself import any element of intention or design : it simply designates the act of taking one's own life, without regard to whether it is felonious or non-felonious, intentional or otherwise.

It was used in this sense by this court in the cases of *Life Ins. Co.* v. *Terry*, 15 Wall. 580; *Bigelow* v. *Berkshire Life Ins. Co.*, 93 U. S. 284; *Ins. Co.* v. *Rodel*, 95 U. S. 232; *Manhattan Ins. Co.* v. *Broughton*, 109 U. S. 121; *Connecticut Ins. Co.* v. *Lathrop*, 111 U. S. 612.

In each one of these cases the word "suicide" and the phrase "died by his own hand," are defined as meaning felonious self-destruction, a definition which has no meaning if "suicide" and "self-destruction" are synonymous terms. It would amount to nothing more than a statement that "suicide" meant "felonious suicide."

On the other hand, if the word "self-destruction" is a generic term then the definition is correct. In common usage the word simply indicates that the man's life has been destroyed through his own instrumentality. To give color to the act some adjective qualifying phrase is necessary.

We therefore submit that, as the evidence showed that the insured died from poison administered by himself with the intention of taking his own life, the plaintiff cannot recover, even though the insured was insane at the time, except by showing that the insanity resulted from disease, and that the proof of it was given to the company.

The circumstances leading to the incorporation of these provisions in life insurance policies are too well known to require more than the merest reference. It having been held that an exception of suicide from the risks assumed would exclude only felonious self-destruction, the insurance companies sought some word or phrase which would have a wider meaning. Some, as the plaintiff in error, adopted the words "self-destruction in any form," while others retained the word "suicide," qualifying it, however, with various phrases, as "sane or insane," "felonious or otherwise," "voluntary or involuntary."

The effect of this was to exclude many risks which the

companies were willing to assume upon proper conditions, as, for instance, they were willing to insure against self-destruction by accident, or while suffering from insanity the direct result of disease, provided they could be protected from imposition, and the well-known tendency of juries to find insanity in every case of self-destruction.

The clause now before the court was designed for this purpose. The company agrees to pay in a certain time after proof of death, self-destruction being excluded "except upon proof that it was the direct result of disease or of accident occurring without the voluntary act of the insured."

Nothing can be clearer than that it was the intention of the parties to exclude from the risks assumed some cases of self-destruction, and in all cases of self-destruction to impose upon the claimant the duty of furnishing proof that it was not one of the excluded cases; and, further, that the cases assumed are those in which the self-destruction was the direct result of disease or accident, and that all others were excluded.

*Mr. D. B. Kurtz* and *Mr. C. H. Akens* filed a brief for defendant in error; but the court declined to hear them.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

This case is governed by a uniform series of decisions of this court, establishing that if one whose life is insured intentionally kills himself when his reasoning faculties are so far impaired by insanity that he is unable to understand the moral character of his act, even if he does understand its physical nature, consequence, and effect, it is not a "suicide," or "self-destruction," or "dying by his own hand," within the meaning of those words in a clause excepting such risks out of the policy, and containing no further words expressly extending the exemption to such a case. *Life Ins. Co.* v. *Terry,* 15 Wall. 580; *Bigelow* v. *Berkshire Ins. Co.,* 93 U. S. 284; *Insurance Co.* v. *Rodel,* 95 U. S. 232; *Manhattan Ins. Co.* v. *Broughton,* 109 U. S 121; *Connecticut Ins. Co.* v. *Lathrop,* 111 U. S. 612; *Accident Ins. Co.* v. *Crandal,* 120 U. S. 527.

In the case at bar, the first two instructions requested were exactly like those held to have been rightly refused, and the modified instruction given upon the third request was substantially like that held to have been rightly given, in *Terry's case*, in which the words of the exemption were "die by his own hand." That decision was followed and approved in *Rodel's case* and *Lathrop's case*, in each of which the words were the same; and in *Broughton's case*, in which the words were "die by suicide," and the court, treating the two phrases as equivalent, expressed the opinion that "the rule so established is sounder in principle, as well as simpler in application, than that which makes the effect of the act of self-destruction, upon the interests of those for whose benefit the policy was made, to depend upon the very subtle and difficult question how far any exercise of the will can be attributed to a man who is so unsound of mind that, while he foresees the physical consequences which will directly result from his act, he cannot understand its moral nature and character, or in any just sense be said to know what it is that he is doing." 109 U. S. 131.

In *Crandal's case*, it was accordingly held that a policy of insurance against "bodily injuries, effected through external, accidental, and violent means," and occasioning death or complete disability to do business, but excepting "death or disability caused wholly or in part by bodily infirmities or disease, or by suicide or self-inflicted injuries," covered death by hanging one's self while insane; the court saying, "If self-killing, 'suicide,' 'dying by his own hand,' cannot be predicated of an insane person, no more can 'self-inflicted injuries'; for in either case it is not his act." 120 U. S. 532.

In the policy in suit, the clause of exemption is in these words: "Suicide. — The self-destruction of the assured, in any form, except upon proof that the same is the direct result of disease or of accident occurring without the voluntary act of the assured."

It was argued that the word "self-destruction," as here used, was more comprehensive than "suicide," and included an intentional, though insane, killing of one's self. But the two words are treated as synonymous in the very clause in ques-

tion, as well as in the former opinions of this court. The act, whether described by words of Saxon or of Latin origin, or partly of the one and partly of the other — "dying by his own hand," "self-killing," "self-slaughter," "suicide," "self-destruction" — without more, cannot be imputed to a man who, by reason of insanity, (as is commonly said,) "is not himself."

The added words "in any form" clearly relate only to the manner of killing; the word "disease," unrestricted by anything in the context, includes disease of the mind, as well as disease of the body; and the concluding words "the voluntary act of the assured" point to the act of a person mentally capable of controlling his will. The clause contains no such significant and decisive words as "die by suicide, sane or insane," as in *Bigelow* v. *Berkshire Ins. Co.*, 93 U. S. 284; or "by suicide, felonious or otherwise, sane or insane," as in *Travellers' Ins. Co.* v. *McConkey*, 127 U. S. 661.

Upon that part of the clause, which requires "proof that the same is the direct result of disease or of accident occurring without the voluntary act of the insured," it was argued that such proof must be furnished to the company as part of the preliminary proof of death; and also that evidence that the mental condition of the insured, at the time of the self-destruction, was of the character which the court below held to render him irresponsible for his act, was not sufficient proof that the self-destruction was the result of disease or accident. But the word "proof" here clearly means, not the proof required as a preliminary to bringing suit on the policy, but the proof necessary to establish the liability of the insurer. And in making out such proof, the plaintiff is entitled to the benefit of the presumption that a sane man would not commit suicide, and of other rules of law established for the guidance of courts and juries in the investigation and determination of facts. *Travellers' Ins. Co.* v. *McConkey*, 127 U. S. 661, 667.

*Judgment affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE SHIRAS did not sit in this case, or take any part in its decision.