## MAIN *v.* AUKAM.

EVIDENCE; PRACTICE; NOTICE TO PRODUCE; DECLARATIONS AGAINST INTEREST; PROOF OF WRITTEN INSTRUMENTS.

1. Whenever a writing or document sought to be proved by one party to a suit is shown to have been last in the possession of the opposite party, secondary evidence of its contents cannot be given without a preliminary notice to produce the original.
2. The necessity for such notice is not dispensed with by subsequent testimony by the defendant in whose possession the document presumably was, that she had handed it to her co-defendant and presumed that it had been delivered to the plaintiff, especially in the absence of proof to show that neither party had made any search for it.
3. Declarations made by two brothers, or by either of them, in the course of a transaction and promotive of its accomplisment, in which transaction they and their sister were all interested, and in which they were acting with her knowledge and sanction, bind all alike.
4. In an action of *assumpsit* to recover the value given by plaintiff in an intended exchange of properties with defendants, for land alleged by plaintiff to have no real existence, a letter purporting to be from an official of the county in which the land was said to be located, refusing to accept for record a deed of the land sent him by plaintiff, is not admissible in evidence, when verified in no way whatever.
5. Where, after the overruling of a motion by the defendant to direct a verdict in his favor, he proceeds to introduce evidence in defense, he thereby waives his right to stand upon the supposed defective proof by the plaintiff.

No. 263.   Submitted May 17, 1894.   Decided September 20, 1894.

HEARING on a bill of exceptions by the defendants in an action of *assumpsit.   Judgment reversed.*

### STATEMENT OF THE CASE.

At the trial the following instructions were granted by the court at the request of the plaintiff, over the objection of the defendants:

" 1. If the jury believe from the evidence that the title to the Boyle farm was in Mollie M. Main and Lewis C. Main,

in September, 1888, and, further, that William H. Main was their agent for the exchange of that farm for Aukam's house and part of his furniture in Troy, N. Y., then any representations made by said William H. Main as such agent in respect to such exchange are binding upon the defendants in this action."

" 2. If the jury believe from the evidence that the defendants induced the plaintiff to assume the $2,000 mortgage on the Boyle farm upon the representation that the title to the Tattnall County, Ga., land was good and valid in George T. Mason and upon the assurance that, if his title was not good, they would make the plaintiff whole to the extent of the value of said personal property and the amount of said mortgage, then the plaintiff is entitled to recover if the jury find from the evidence that the title of said Mason to said land was not a good and valid title."

No prayers for instruction were asked by the defendants.

The further material facts of the case will be found stated in the opinion of the court:

*Mr. W. L. Cole* and *Mr. D. W. Glassie* for the plaintiffs in error.

*Mr. A. B. Duvall* and *Mr. Samuel Maddox* for the defendant in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action of *assumpsit* to recover money, the price paid by the plaintiff, Frederick G. Aukam, to the defendants, Mollie M. and Lewis C. Main, upon the conveyance of a pretended title to land in the State of Georgia, the purchase thereof or exchange therefor being induced by the false and fraudulent representations of the defendants.

The action was brought against the present appellant and her brother Lewis C. Main, but the latter was not served with process, and the action proceeded against the present appellant alone. She pleaded that she was not indebted as

alleged, and that she never promised as alleged. The trial resulted in a verdict and judgment in favor of the plaintiff for the amount claimed.

There are several errors assigned by the appellant on the rulings of the court below, but it will only be necessary to consider the most material of them.

It appears that the plaintiff, the present appellee, was owner of certain real estate near the city of Troy, in the State of New York, which he valued at $22,000; and the defendants, Mollie M. Main and Lewis C. Main, were owners of a farm near the city of Washington, District of Columbia, valued by them at $22,000, the same being subject to a mortgage for $2,000. The parties agreed to an exchange of properties, and deeds were made; and the plaintiff discharged the incumbrance on the property of the defendants, and assisted them in obtaining a loan and fixing a charge upon the property conveyed to them by the plaintiff, to the amount of $5,000. And in consideration of the plaintiff's assumption and paying off the incumbrance of $2,000 upon the property conveyed by the defendants to the plaintiff, and in further consideration of certain furniture and other personal property turned over to the defendants by the plaintiff, the former agreed and pretended to pass and transfer to the latter title to 5,000 acres of land in Tattnall County, in the State of Georgia, by the delivery to him of a deed for such land. But it turns out, as alleged and contended by the plaintiff, that neither title nor location of the land can be traced or found to exist in the County of Tattnall, in the State of Georgia, and that the pretense of claim to title of such land was simply a deceit and a fraud.

1. The plaintiff was a witness in his own behalf, and after testifying to the circumstances that led up to the making of the contract of exchange, he was asked by counsel for defendant whether the contract was in writing, to which the plaintiff replied that it was, and further that *the agreement was left*

*with the defendant* Mollie M. Main, he preserving a memorandum from it in his pocket book, which he had subsequently lost, and that he had diligently searched for the same, but was unable to find and produce it.    The defendant thereupon objected to the plaintiff's statement of the terms of the said agreement, the same being in writing, and the writing itself being the best evidence of the contract, and because no notice had been given the defendant to produce said written contract to be used as evidence.   But the court overruled the objection, and allowed the plaintiff to state and give in evidence the terms and contents of such written contract, and the defendant excepted.

It is not, of course, except in cases provided for by statute, within the power of one party to compel the other to produce writings in his possession to be used as evidence against him.    But if such evidence is required, the law has devised the means by which it can be obtained, or the right to use secondary evidence of its contents; and that is, by giving the opposite party or his attorney regular and reasonable notice to produce the writing at the trial.   After such notice, and proof that the writing needed is in the possession, or under the control, or subject to the direction, of such opposite party, or either one of them, where more than one, the party giving such notice, having done all in his power to supply the best evidence, will be allowed to give evidence of an inferior kind, and may read and examine copy, or give parol evidence of the contents of the writing sought to be proved.   But without such notice to produce the original writing shown to be in the possession or under the control of the opposite party, secondary evidence of its contents cannot, ordinarily, be given.   Whenever the writing or document is shown to be in the possession or control of the opposite party, no evidence can be given of its contents without the preliminary notice to produce the original. 1 Greenl. Ev., Secs. 560, 561 ; *Riggs* v. *Tayloe,* 9 Wheat. 483; *Chicago* v. *Greer,* 9 Wall. 726, 734.   Here the plaintiff, by

his own testimony, proved the original contract to have been left in the possession of the defendant; and it is not pretended that any notice to produce it was ever given. Nor is there anything disclosed in the bills of exception to relieve the plaintiff from the operation of the general rule requiring notice to be given. It is true, the defendant, as a witness for herself, in a subsequent part of the case, testified that she handed the original contract to her brother, Lewis C. Main, the party sued as a co-defendant with her, and that she had supposed the contract to have been left with the plaintiff. But there was no proof offered by either party to show that any search had been made, or any unavailing effort to trace the paper, to give rise to the presumption that it had been either lost or destroyed. If notice had been given as required, it would have suggested to the defendant the duty or propriety, looking to her own interest, to make proper effort to produce the original paper, to avoid the possibility of having something proved as the contents that the original paper would not support. The paper was in fact in existence, and was in the hands of a party who had been sued as a co-defendant with the present appellant, where she had placed it, according to her testimony, and was subject to her call and production when it suited her purpose to produce it, as is shown in the motion for a new trial. We are of opinion, therefore, that there was error in the ruling of the court, as set out in the first bill of exception, in allowing secondary evidence of the contents of the written contract to be given, without notice to produce the original.

2. The second exception was taken by the defendant to the ruling of the court in allowing the declarations of Lewis C. Main and William H. Main to be given in evidence, whereby they assured the plaintiff that the title to the Georgia land conveyed to the plaintiff was good. The defendant objected to the admissibility of these declarations, upon the ground that they were not made with authority

to bind her. But the court was clearly right in admitting the declarations in evidence. The two brothers were at Troy for the known and avowed purpose of effecting and consummating the business of the exchange of properties. They were there, with the knowledge and sanction of the sister, to act for her; and the object and purpose of their presence there seems to have been common to them all, and they co-operated the one with the other to bring about the ultimate result. The declarations made by the brothers, or either of them, in the course of the transaction, and promotive of its accomplishment, were made for the sister as well as for themselves, and bind all alike.

3. The third exception by the defendant was taken to the allowance by the court of a letter to be read in evidence for a special purpose stated in the exception. The plaintiff, for the purpose of showing the imposition practiced upon him, in respect to the Georgia land, and to show that there was no land in Tattnall County to answer the description and ownership of that professed to be conveyed to him, offered to read in evidence a letter from one Lee, purporting to have been written from the office of the clerk of the Superior Court of Tattnall County, Georgia, dated November 16, 1888, stating that no such title or land appeared of record in that office, and that the deed enclosed to him for record could not be recorded, under the law of the State. To the reading of this letter for any purpose the defendant objected; and the court, while refusing to allow the whole letter to be read, allowed such parts of it to be read as showed that the deed made to the plaintiff had been refused record by the clerk, and the defendant excepted.

We think the letter ought to have been excluded entirely. There was no proof of its genuineness, nor that it emanated from any such official source as it professed on its face. There was no verification of it whatever. The letter could not prove itself, and no statement it contained could be

received as evidence of any fact essential to be proved in the case.

It has been urged in argument that the defendant has recognized the genuineness of the letter. But we fail to find any evidence of that fact. It is true, the plaintiff says, as stated in the fourth bill of exception, that he called the attention of the defendant and William H. Main to the letter offered to be read in evidence, and demanded of them that the title to the Georgia land should be made good to him; and that both the defendant and William H. Main *asserted their belief that the title was good,* and offered to make him whole by the substitution of other property, which he declined to accept; but insisted upon the payment to him of the sum of $3,000, the valuation placed upon the Georgia land in the trade; and that they put the plaintiff off from time to time, and evaded their promise to fix the matter up to his satisfaction. This certainly does not recognize the genuineness of the letter, or the truth of its statements. We think the ruling stated in the third exception was erroneous.

4. The ruling of the court as stated in the fifth exception was entirely correct.* As the state of the proof existed on the close of the plaintiff's evidence in chief, the court was entirely unable to conclude, *as matter of law,* that there was not a *prima facie* case presented on behalf of the plaintiff. Moreover, the defendant, at the time of making this application to the court, had not rested her case, but afterwards went on and introduced evidence on her own behalf to refute the testimony on behalf of the plaintiff. This was a waiver of the right to stand upon the supposed defective proof of the plaintiff. *Accident Ins. Co.* v. *Crandal,* 120 U. S., 530; *Grand Trunk Rwy. Co.* v. *Cummings,* 106 U. S., 700.

5. The exceptions taken to the granting of the instruc-

---

* The exception was to the overruling of defendant's motion at the close of plaintiff's case to instruct the jury to return a verdict in his favor.—REPORTER.

tions asked by the plaintiff, we think, present no substantial error. The propositions presented by these instructions are embraced in the general charge of the court to the jury; and there was no exception taken to such general charge of the court.

From what we have said, it follows that the judgment must be reversed, for the errors to which we have referred, and the cause be remanded for a new trial.

*Judgment reversed, and cause remanded for a new trial.*