## NEW YORK LIFE INS. CO. v. BROWN.
### No. 5617.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1930.

Rehearing Denied April 21, 1930.

W. Colquitt Carter and Grover Middle-brooks, both of Atlanta, Ga. (Louis H. Cooke, of New York City, and Bryan & Middle-brooks, of Atlanta, Ga., on the brief), for appellant.

John T. Dennis and R. B. Blackburn, both of Atlanta, Ga. (Hewlett & Dennis, of Atlanta, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, as beneficiary, brought suit on two policies of insurance on the life of Max Brown, which provided for double indemnity if the death of the insured resulted directly from external, violent, and accidental means. Appellant had admitted liability for the face of the policies and had paid that amount, but defended against double indemnity on the ground that the insured had committed suicide. Appellee recovered a verdict on which judgment was entered. A new trial was denied, and this appeal followed. Error is assigned to the refusal of a directed verdict at the close of the evidence.

The insured, a tailor, was found asphyxiated by illuminating gas, sitting at a table in his place of business, in Jacksonville, Fla., about 7 o'clock in the morning. Close by was a pressing iron which, when in use, was heated by gas through a flexible tube connected to a gas fixture on the wall. While there is no doubt that the room was filled with gas at the time the body was discovered, the evidence was conflicting as to other conditions existing at the time. There was testimony tending to show that the tube was connected to the iron but disconnected from the fixture, but, also, that the fixture was turned off, and the source of the gas leak could not be discovered; that the cock in the fixture was loose, and gas had been known to escape before. On the other hand, there was testimony tending to show that the tube was disconnected from the iron and gas was pouring out of it and that the cock in the fixture was open. As throwing light upon the mental attitude of deceased, there was testimony tending to show that shortly before his death he had been divorced from his wife, appellant, and that she was constantly harassing him for money; that he was in bad financial shape, unable to pay his rent, and could not account for certain moneys that had been paid to him for the purchase of cloth to be used in the making of uniforms for the police band. On the other hand, there was testimony tending to show that he was cheerful and in good spirits immediately before his death; that his wife and he had become reconciled and, while they did not live together, they were friendly and saw each other frequently, the last time a day or two before his death.

On the facts shown by the record, the case was essentially one for the jury and it was not error to submit it to them.

Error is assigned to the admission of a certificate from the coroner at Jacksonville, which recited that the death was accidental.

The coroner's certificate was admitted by the district court on the theory that it made prima facie proof of its recitals under the law of Florida, where the death occurred. However, notwithstanding the admission of

378

the certificate, the officer who made it appeared as a witness and testified in the case and was subjected to cross-examination by counsel for appellant. If its admission was error, which it is unnecessary to discuss, it was harmless.

Error is assigned to the refusal of the following requested charge: "Should there be any conflict in the evidence as to whether the insured's 'death was accidental or suicidal, the presumption against suicide is not sufficient to place upon the defendant the burden of showing that the death was suicidal. On the contrary, the burden is upon the plaintiff throughout, assisted by the presumption against suicide, to establish by a preponderance of all of the evidence that the insured's death resulted from accidental cause and did not result from self-destruction, sane or insane."

And to the following portion of the general charge: "In deciding where the preponderance of evidence is you are to remember the presumption, of course, that a man does not take his life, so if the matter be so evenly balanced and so uncertain that you cannot tell from the evidence itself, then the presumption would govern, but if the evidence itself shows you the truth, then you will follow the truth and leave the presumption."

The requested charge is conflicting in its parts. The first sentence, in effect, would instruct the jury to disregard the presumption against suicide, while the second sentence would tell the jury to give it effect. The charge would have confused the jury and was properly refused for that reason alone. However, the second sentence correctly states the law and is substantially the same as the charge given. The presumption against suicide arose upon proof that was consistent with death by accident. It was not incumbent on the plaintiff to negative the theory of suicide, except by showing the facts and circumstances of the death. Suicide is a defense to the insurer and, when invoked, the burden of overcoming the presumption must be met. Whether the burden is sustained depends on the facts in each case. Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; Connecticut Mut. Life Ins. Co. v. Akens, 150 U. S. 468, 14 S. Ct. 155, 37 L. Ed. 1148; New York Life Ins. Co. v. Ross (C. C. A.) 30 F.(2d) 80; Prudential Ins. Co. v. Baciocco (C. C. A.) 29 F. (2d) 966. The refusal of the requested charge and the charge given was not error.

No other errors are assigned.

Affirmed.