CLARKSON v. NEW YORK LIFE INS. CO.

No. 720.

District Court, S. D. Florida, Jacksonville Division.

Jan. 17, 1933.

Marks, Marks, Holt, Gray & Yates, of Jacksonville, Fla., for complainant.

792

Doggett, McCollum, Howell & Doggett, of Jacksonville, Fla., for defendant.

STRUM, District Judge.

Plaintiff sues in equity to restrain the threatened cancellation of six insurance policies issued by defendant upon plaintiff's life, and to recover certain disability benefits under the policies.

One policy contains the provision that "whenever the company receives due proof * * * that the insured * * * has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days, * * *" then certain disability benefits will be paid and further premiums waived.

The other five policies contain the provision that upon receipt by the company " * * * of due proof that the insured is totally and permanently disabled * * *" certain disability benefits will be paid and future premiums waived; that "disability shall be deemed total whenever the insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit" and shall be presumed to be permanent "whenever the insured will presumably be so totally disabled for life" or "so totally disabled for not less than three consecutive months immediately preceding receipt (by the company) of proof thereof."

The controlling issue is one of fact,—whether or not the insured, during the life of the policies, became wholly (or totally) and permanently disabled within the meaning of the policies.

Plaintiff asserts that he became so disabled about April, 1928, and has remained so. Defendant denies that plaintiff was ever so disabled.

For a substantial number of years prior to April, 1928, plaintiff had been secretary and treasurer of several lumber companies, having charge of the financial and accounting affairs of the business. He was an office or clerical man. Generally speaking, and with certain unimportant exceptions, plaintiff's health had been good all his life until about 1926, when he suffered a severe attack of fever, since which he claims not to have been strong or well, and claims to have become extremely nervous, sometimes hysterical. Plain-

tiff resigned his position on April 1, 1928, assigning ill health as the cause. Soon thereafter he submitted his claim for disability benefits here sued for. Plaintiff has since followed at least three gainful occupations at intervals, but not continuously. One of them, followed for about eight and a half months during the year 1930, was quite similar, though not identical, with his former occupation with the lumber companies. It is significant that the lumber companies with which plaintiff was associated for many years prior to 1928 suffered financial difficulties, and practically suspended business about the time plaintiff resigned, at which time plaintiff acquired from the lumber companies five of the policies here sued upon, which had theretofore been taken out and the premiums thereon paid by said companies; only one of the policies having been originally issued direct to the insured. Very shortly after his resignation aforesaid, plaintiff consulted a physician in Jacksonville for the declared purpose, so the physician testified without contradiction, of ascertaining whether plaintiff was totally and permanently disabled within the terms of these policies so as to claim the disability benefits. This physician, after a thorough examination, advised plaintiff that he was not disabled, that he could follow his vocation, and that he could and should go back to work and forget about his insurance.

There is voluminous testimony, both expert and lay, as to plaintiff's physical and mental condition. It is impracticable to do more than recapitulate it within reasonable bounds.

There is credible evidence that plaintiff apparently has some ailment of the gastrointestinal tract and possibly a recurring, but not chronic, thyroid ailment; that he manifested symptoms of psychoneurosis, both functional and organic, with episodes resembling psychosis or borderline psychopathic tendencies; it being the opinion of some of the physicians that plaintiff's nervous symptoms are the result of the underlying organic ailments mentioned, or some of them, and that such mental symptoms will continue until the underlying organic ailment is cured.

On the other hand, however, there is credible, and preponderant, counter testimony that, with the possible exception of chronic gall bladder trouble, less than disabling, and the existence of which in fact is left in doubt, plaintiff suffers from no ailment of the gastrointestinal tract, nor of the thyroid gland; that his heart action and general physical reactions are normal; that he is not extremely

nervous; showed no unusual signs of exhaustion following a strenuous medical examination covering five or six hours; has not lost, but has gained, weight, though employed at one time for eight consecutive months at both physical and mental tasks; that he is not suffering and has not suffered from psychoneurosis, or neurasthenia; that he is not in, nor bordering upon, a psychopathic state; and that there are no peculiarities about plaintiff's eyes suggesting any of the mental ailments mentioned; that he displays a bright, clear mind and memory, even in small details (which testimony of the physicians is thoroughly sustained by an examination of the plaintiff's own testimony in this case); that plaintiff possesses substantial, if not altogether normal, physical endurance, and is capable of withstanding sustained physical and mental effort. It does appear, however, that plaintiff seems to brood over his business reverses, and those of the firms with which he was formerly connected, and subjects himself to abnormal mental stress on account thereof, that plaintiff has chronic inguinal rings, though a truss is unnecessary, and that neither this ailment nor chronic gall bladder trouble from which plaintiff probably suffers is in any substantial sense disabling, certainly not wholly or totally so. Plaintiff clearly is not insane, but is mentally alert and active.

Taking the conflicting medical testimony as a whole, viewing it in the light of the lay testimony, including that of the plaintiff himself, together with the inescapable deductions and inferences to be drawn therefrom in the light of the physical facts evidenced by such testimony, the court is of the opinion that plaintiff suffers from nothing more serious than inguinal rings and possibly a chronic gall bladder ailment of minor degree, but that plaintiff is decidedly introspective, with neurotic tendencies, and subjects himself to abnormal mental stress over his business reverses and other affairs, a too ready capitulation to which influences results in a state of hypertension,—what would ordinarily be called nervousness—coupled with recurring lachrymal emotion. His nervous tendencies, however, appear to be emotional, rather than organic or functional, with but slight foundation in physical disorders.

Though there is credible testimony, medical and lay, tending to support plaintiff's claim, the clear preponderance of the medical testimony supports defendant's contention, and the latter testimony is convincingly corroborated by the physical facts which appear from other testimony in the case. Besides the testimony of the doctors, the undisputed testimony of defendant's witnesses as to plaintiff's personal activities in the conduct of this case strongly tend to negative the existence of infirmities in the plaintiff, either mental or physical, amounting to total disability within the terms of the policies.

The term "wholly and permanently disabled" is to be given a rational meaning,—not strained in either direction. The term does not mean a state of absolute helplessness. Nor does the mere inability, at infrequent intervals, to perform some of the acts required in the conduct of a business or occupation constitute total disability. Disability is total if it prevents the party suffering it from performing acts necessary to the prosecution of his business in substantially the customary and usual manner. Standard Accident Ins. Co. v. Bittle (C. C. A.) 36 F.(2d) 152; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753.

Attempts by the insured to work, especially when made in such circumstances as to imperil his life or health, will not of themselves defeat recovery, even though plaintiff may have succeeded in doing some work. Mutual Benefit Health & Accident Ass'n v. Mathis (Miss.) 142 So. 494; Rathbun v. Globe Indemnity Co., 107 Neb. 18, 184 N. W. 903, 24 A. L. R. 191. Nor, to be "permanent," is it necessary that it be apparent that the disability will last forever. Penn. Mutual Life Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1383; Wenstrom v. Aetna Life Ins. Co., 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289.

Even if mental ailments are comprehended within the term "bodily injury or disease" as used in the policies (see Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740. Compare Connecticut Mutual Life Ins. Co. v. Akens, 150 U. S. 468, 14 S. Ct. 155, 37 L. Ed. 1148; Mutual Life Ins. Co. v. Terry, 82 U. S. (15 Wall.) 580, 21 L. Ed. 236; Blackstone v. Standard Life & Accident Ins. Co., 74 Mich. 592, 42 N. W. 156, 3 L. R. A. 486), the plaintiff has not been thereby prevented nor incapacitated from engaging with reasonable regularity in substantially gainful occupations, nor from performing the duties thereof in substantially the usual manner.

The court concludes that neither plaintiff's mental nor physical ailments, nor both, have rendered plaintiff wholly (or totally) and per-

manently disabled within the terms of the policies sued on. The equities are therefore with the defendant.

Plaintiff's bill is dismissed.