## MISSOURI STATE LIFE INS. CO. v. WEST et al.

### No. 898.

Circuit Court of Appeals, Tenth Circuit.

Nov. 11, 1933.

Frank Settle and M. C. Rodolf, both of Tulsa, Okl. (Hulette F. Aby and William F. Tucker, both of Tulsa, Okl., on the brief), for appellant.

G. C. Spillers, of Tulsa, Okl. (Charles L. Yancey, Donald L. Brown, F. C. Swindell, and C. R. Nixon, all of Tulsa, Okl., and Roy H. Wasson and E. L. Foulke, both of Wichita, Kan., on the brief), for appellees.

Before McDERMOTT and BRATTON, Circuit Judges, and SYMES, District Judge.

McDERMOTT, Circuit Judge.

A jury, properly charged, found that Clarence Dent was accidentally killed, and a judgment accordingly was rendered on an accident insurance policy. The company's chief contention is that the circumstances exclude every rational hypothesis except that of suicide, and that the trial court erred in refusing to direct a verdict for the company. There is no dispute as to the law. The burden is upon plaintiff to establish that death resulted from injuries effected through accidental means. When the proof establishes such a death, without more, the rational inference or presumption is that it was not suicidal. But where the circumstances are such that reasonable men may differ as to whether the death was suicidal, then the case is for the jury. Where the proof is so convincing that but one rational conclusion may be drawn, then the court should direct a verdict. Among other cases, see Travelers' Ins. Co. v. Bancroft (C. C. A. 10) 65 F.(2d) 963, certiorari denied 54 S. Ct. 103, 78 L. Ed. ——; Love v. New York Life Ins. Co. (C. C. A. 5) 64 F.(2d) 829; Frankel v. New York Life Ins. Co. (C. C. A. 10) 51 F.(2d) 933; New York Life Ins. Co. v. Brown (C. C. A. 5) 39 F.(2d) 376; Prudential Ins. Co. v. Baciocco (C. C. A. 9) 29 F.(2d) 966; Mutual Life Ins. Co. v. Graves (C. C. A. 3) 25 F.(2d) 705; International Life Ins. Co. v. Carroll (C. C. A. 6) 17 F.(2d) 42, 50 A. L. R. 362; Tabor v. Mutual Life Ins. Co. (C. C. A. 4) 13 F.(2d) 765; Pythias Knights' Supreme Lodge v. Beck, 181 U. S. 49, 21 S. Ct. 532, 45 L. Ed. 741; Home Benefit Association v. Sargent, 142 U. S. 691, 12 S. Ct. 332, 35 L. Ed. 1160.

No useful purpose will be subserved by an analysis of the facts in these cases; they may be read. While the rule stated is the same, the facts in no two cases are alike.

■ Mr. Dent's body, lying on its back, was found in the sitting room of his apartment about seven o'clock in the morning of a cold day in February. The window and door to the apartment were open. There was a bullet hole through Dent's body, and he had been dead for some time. He was clothed in underwear, pajamas and bathrobe. He had returned to his apartment about eleven o'clock the night before, in apparent good health and spirits, but his bed had not been slept in. There was a shortage in his business accounts, disclosed after his death, but Dent knew prior to his death that an audit was to be made. There was also evidence that attempts had been made to break into the apartment.

A Savage automatic pistol was lying to the left of his body and an empty shell to the right. The pistol ejects to the right. There was a dispute in the evidence as to whether the pistol belonged to Dent. What one witness thought to be powder burns were found on the front of the pajamas, but not on the bathrobe which was over the pajamas.

Appellant does not contend that Dent shot himself in the back. Its case is founded on the theory that he shot himself in the breast. To account for the location of the empty shell and the pistol, it is necessary that it argue either that Dent stood on his head when he shot himself, or held the pistol upside down. It takes the latter alternative and contends, with apparent seriousness, not only that the jury might, but must, adopt the following weird theory of the accident. We quote from appellant's brief:

"Obviously it became too much for him and finally, toward early morning, he summoned up the courage to take up the automatic pistol, walked to the front door, unlocked it, opened it, turned off the lights, held the automatic pistol upside down in his left hand under and muffled by his heavy bathrobe and, probably with the thumb of his right hand, pulled the trigger and discharged the bullet into his left breast."

If the argument were made that such explanation of the physical facts was so fantastic that it did not fall within the realm of reason, it would be understandable. It might have been physically possible for Dent to open the door and window, hold the pistol upside down with his left hand and pull the trigger with his right, although a demonstration in the court room indicates that such a contortion requires an agility on his part of which there is no proof. But even so, no rational reason has been suggested why, if this was a suicide, the house was opened and the pistol held in an unnatural, if not impossible manner. The argument that a jury must accept such an absurd explanation of the accident is not understandable.

But that is not all. The garments worn by Mr. Dent when he was shot have been certified to this court and have been inspected. Whatever dispute there may be as to whether the hole now in the back of the bathrobe is a bullet hole, it is entirely clear that the bullet entered the back of the pajamas and underwear and came out through the front of those garments. The holes in the back are the round, clean, incisive holes that bullets make on entry; the holes in the front are the large, irregular, jagged holes they make after passing through cartilage and tissue. The hole in the back of the bathrobe is the slight tear or abrasion made by a high-speed bullet through loosely-woven fabric. The "powder burn" on the front of the pajamas is not a powder burn at all, but a grease spot that goes clear through the garment; it could not be a powder burn for the bathrobe was between the pistol and the pajamas. There is no suggestion that Dent had all his clothes on backwards; if he did not, the evidence of our own eyes establishes beyond peradventure of a doubt that Dent was shot in the back. The testimony of the undertaker that the hole in the body was small in the front and large in the back was flatly contradicted and must be charged to a faulty memory in the face of the visible record to the contrary. A jury of men accustomed to firearms, confronted with the clothing, could come to no other conclusion than the one arrived at.

■ The error assigned as to the exclusion of a statement, supposedly made by Dent's daughter and one of the beneficiaries who died before the trial, is of little consequence in view of the conclusive proof of accidental death. The statement seems to have been on several pages of paper, and the daughter's signature on one page was identified. Upon argument it was stated that the trial court excluded it for lack of proper identification, but the record is silent as to the reason. Whether the pages were in her handwriting, whether there was a break between the pages, or other internal evidence that induced the trial court to require further identification, we are not advised. The identification offered was meager; the record discloses nothing of the circum-

470

stances under which the statement was made, nor more than the fact of the daughter's signature on one page. This is not enough to enable us to say the trial court abused his discretion in requiring additional identification; he had a better opportunity to judge of that than we. Clarke v. Hot Springs Electric Light & Power Company (C. C. A. 10) 55 F.(2d) 612, certiorari denied 287 U. S. 619, 53 S. Ct. 19, 77 L. Ed. 537. Or it may have been excluded as improper cross-examination—and if so, the ruling was clearly right. Nor was the error, if one there was, prejudicial. Part of the statement is hearsay, part a narration of undisputed facts, part unfavorable to appellant, and the rest cumulative in that others testified the daughter had said the same thing to them.

The judgment is clearly right, and is Affirmed.