### MANDLES et al. v. GUARDIAN LIFE INS. CO. OF AMERICA.
### MANDLES v. SAME.
### Nos. 112, 113.

District Court, D. Colorado.
April 13, 1940.

Ira C. Rothgerber, Walter M. Appel, and Ira C. Rothgerber, Jr., all of Denver, Colo., for plaintiffs.

Lowell White, of Denver, Colo., for defendant.

SYMES, District Judge.

By agreement these two cases were argued and briefed as one on the question raised by the defendant's motion to dismiss, i. e., does the complaint state a claim upon which relief can be granted?

We accept plaintiff's statement that:

"This suit is to recover the sum of ten thousand dollars ($10,000.00) under a double indemnity clause contained in a life insurance policy. The single indemnity has been paid.

"The insured, Bessie Rude, had been adjudged insane, and was in charge of a nurse. She complained of being annoyed by voices. She went to the window for the purpose of calling for help for reporting the voices. She thrust her arm through the lower pane of a window, receiving cuts, and, as a direct result of the cuts, her arm became infected, and she died of septicemia four (4) days later."

The pertinent part of the policy is as follows: "If said policy shall become a claim by the death of the Insured during the continuance of said policy and this agreement and before default in payment of premium and the Company shall receive due proof at its Home Office in the City of New York that such death resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, * * * then in lieu of the face amount of said policy, the Company will pay double that amount, provided, however, that the double indemnity shall not be payable if the Insured's death resulted from suicide, whether sane or insane, * * * or directly or indirectly from bodily or mental infirmity or illness or disease in any form."

No decision of the highest court of Colorado is in point, so we turn so far as they are in point, to four decisions of our Circuit Court of Appeals, Aetna Life Ins. Co. v. Conway, 10 Cir., 102 F.2d 743; Carpenter v. Connecticut General Life Ins. Co., 10 Cir., 68 F.2d 69; New York Life Ins. Co. v. Doerksen, 10 Cir., 64 F.2d 240; Id., 10 Cir., 75 F.2d 96, and cases cited, to ascertain what the state Supreme Court might decide in a similar situation.

We thus avoid the temptation to discuss and align the numerous authorities marshaled in the briefs. Many of them discuss voluntary or intentional acts of sane persons, and others turn upon contractual provisions which to the cursory reader seem to be in point, but in fact distinguishable from the double indemnity clause we here interpret. The face amount of the life policy was promptly paid and all facts necessary to a decision on the merits of the remaining question are in the complaint.

Every accident does not necessarily give rise to a cause of action. So here to support a recovery, the accident, if any, must be of the type covered by the clause in question, which expressly excludes bodily injuries caused, wholly or partially, by other than accidental means, or from death resulting from accidental means contributed to or indirectly caused by mental infirmity or disease.

Insanity is a mental infirmity. Words and Phrases, Volume 1, Third Series, p. 878; Volume 4, Third Series, p. 317. So necessarily if the septicemia was the direct and proximate result of an insane act the plaintiff cannot prevail.

In Chase v. Business Men's Assurance Company, 10 Cir., 51 F.2d 34, page 36, Judge Phillips said this: "It is true that

where an accidental injury to the body brings about or causes a disease, which in turn causes death, the cases generally hold the accidental means is the cause of such death."

That the converse of this is true of course follows. So plaintiff must establish a wholly independent accidental injury. In New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, supra, the court interpreted a double indemnity clause very similar to the one at bar, and said that to recover for accidental death of an insured suffering from heart disease, there must be substantial proof that the mishap alleged to have caused death resulted from untoward incident, and that death resulted from injury received in accident, rather than such disease.

The necessity of close inspection of the decisions pro and con is made evident when we examine Accident Insurance Co. v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 687, 30 L.Ed. 740, for instance, cited by plaintiff. Mr. Justice Gray's statement that the Supreme Court has uniformly held that a policy which provides it shall be void if the assured "shall die by suicide," or "shall die by his own hand," does not include a self-killing by an insane person, is predicated upon the absence of the words "sane or insane." This at once distinguishes the argument based thereon from our case.

The distinction is further emphasized in Connecticut Life Insurance Co. v. Akens, 150 U.S. 468, 14 S.Ct. 155, 157, 37 L.Ed. 1148, where Mr. Justice Gray again speaking for the Supreme Court affirmed the Crandall case, supra, and said intentional suicide by one whose reasoning faculties are so far impaired by insanity that he is unable to understand the moral character of his act, even if he does understand its physical nature, is not suicide within the meaning of those words in a clause excepting such risks out of the policy and *"containing no further words expressly extending the exemption to such a case."* (Italics ours.)

And it might well be the draftsman of the clause we are considering had Mr. Justice Gray's two opinions before him.

Justice Taft in Manufacturer's Accident Indemnity Co. v. Dorgan, 6 Cir., 58 F. 945, at page 955, 22 L.R.A. 620, points out what "disease and bodily infirmity" includes. The case supports the contention that mental disease was the indirect cause of Mrs. Rude's death and brought about the direct result, the blood infection.

Let us see if there could have been an accident here except for the insanity of the insured. If normal, her act in thrusting her hand through a pane of glass must have been premeditated and intentional, and the beneficiary cannot be heard to say it was accidental. But, says the plaintiff, it was not premeditated because she was insane. If so it resulted "directly or indirectly from * * * mental infirmity, or illness or disease in any form," and not "directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means." Consequently, there can be no liability under this particular policy.

We do not, of course, nor is it necessary to say an insane person can never recover for an accident under the double indemnity clause. A mental incompetent, riding quietly on a street car, could suffer an accident resulting from the collision of the car with another vehicle and recover. This because the mental disease was not a moving factor in the chain of causation. Again, if the septicemia and death had resulted from a hypodermic injection given the plaintiff by a reputable physician in the course of treatment, her insanity might be immaterial on the question of the cause of her death. On the other hand, had the insured died from hemorrhage resulting from the cuts on her arm, it could hardly be said the death was accidental. The same reasoning applies where death was the result of the septicemia. It is common knowledge that blood poisoning not infrequently follows cuts. One who deliberately thrusts a hand through a pane of glass must be held to have contemplated all the natural and proximate results of the act, such as hemorrhages, lacerations, permanent injury to muscles and nerves, blood poisoning, etc.

Plaintiff's act was either intentional or unintentional. If the latter it was not due solely to external, violent and accidental means, but was, directly or indirectly, the result of mental infirmity or injury or disease in any form, sane or insane. The deceased did only what an insane person would do and set in motion a series of acts that directly brought about septicemia. Thus the plaintiff is caught on either horn of the dilemma.

The motion is sustained.