WARNER NEWTON, as Administrator, etc., Respondent, *v.* THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, Appellant.

Where a person who, although aware that a certain act will terminate his life, yet does the act under the control of an insane impulse, caused by disease and derangement of his intellect, which deprives him of the capacity of governing his own conduct in accordance with reason, the act cannot be regarded as voluntary.

Such an act, therefore, is not within the provision of a policy of life insurance avoiding it in case the insured " die by his own hand."

In an application for a policy, the insured answered "No" to a question as to whether any member of his family "had died or been afflicted with insanity * * * or other hereditary disease." It was stated, however, that his father had died of a brain disease, caused by a hurt. In an action upon the policy, defendant claimed the answer to be untrue, and gave in evidence copies of entries in the records of a probate court of Ohio, determining the insured to be insane, and ordering him to be sent to a lunatic asylum; also records of the asylum showing that he had been admitted therein. The mother of the insured testified that her husband received an injury on his head in childhood; that for many years before his death he was afflicted with pains in his head, of which he complained, referring to the hurt he had received; that later he showed signs of weakening of mental powers, which continued and increased until his death, but that to the end he knew what was going on; that he was sent to the asylum by friends for quiet and treatment. It did not appear that he was subject to any delusions or acted irrationally After death an autopsy disclosed that his disease was hardening of the brain. *Held,* that the records were not conclusive, as against plaintiff, as to the insanity of the father; nor did the evidence authorize the court to determine, as a question of law, that the answer was untrue. As to whether the records were competent evidence, *quære.*

(Argued February 17, 1879; decided March 18, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, reversing an order of Special Term, denying a motion for a new trial. (Reported below, 15 Hun, 595.)

This action was upon a policy of life insurance issued by defendant upon the life of Henry C. Ross, for the benefit of his wife, plaintiff's intestate.

The policy contained conditions avoiding it if the insured should "die by his own hand," or if the statements in the application should be found to be in any respect untrue.

The facts appearing on the trial are set forth sufficiently in the opinion. At the close of the evidence on the trial, the court directed a nonsuit.

*E. H. Prindle*, for appellant. The answers of the insured in his application were warranties, and if any of them were untrue, it rendered the contract void. (*Foote* v. *Ætna L. Ins. Co.*, 61 N. Y., 571; *Barteau* v. *Phœnix Mu. L. Ins. Co.*, 67 id., 575; *Higbee* v. *Guard Mu. Ins. Co.*, 53 id., 603; Bunyan on Life Ins., 31.) The concealment of a material fact when a general question is put by the insurers at the time of effecting the policy, which would elicit that fact, will vitiate the policy. (*Vose* v. *Eag. L. and Health Ins. Co.*, 1 Big., 164; *Rawls* v. *Am. Mu. L. Ins. Co.*, 27 N. Y., 295; *Smith* v. *Ætna L. Ins. Co.*, 49 id., 214.) The presumption is the insured was sane when he killed himself, and it was incumbent upon plaintiff to prove that the act was not the conscious, voluntary act of one responsible for his actions. (*Van Zandt* v. *Mu. Ben. L. Ins. Co.*, 55 N. Y., 169; *McClure* v. *Mu. Ben. L. Ins. Co.*, id., 651; *Wood* v. *Mu. Ben. L. Ins. Co.*, 70 id., 561; Ray's Med. Jurispru. of Insanity, § 214; *Sauter* v. *N. Y. C. and H. R. R.*, 66 N. Y., 50.) The claims of the assured must be subject to such stipulations and conditions as were made by the husband on entering into the contract for her. (*Baker* v. *Union Mu. L. Ins. Co.*, 43 N. Y., 283; *Estes* v. *World Mu. L. Ins. Co.*, 13 N. Y. Sup. Ct., 349; *Nat. L. Ins. Co.* v. *Minch*, 52 N. Y., 149; *Fitch* v. *Am. Pop. L. Ins. Co.*, 59 id., 573.) The commission of lunacy, and the evidence taken thereon, were admissible in evidence. (Starkie on Evidence [marg. p.], 380; id., 404, 405, 406, *et seq.;* 2 Phill. on Evidence [Cowen & Hill's], 262, note ; id., 262.)

*Isaac S. Newton*, for respondent. If the insured was so

insane that he did not understand his act would kill him, or he acted under the influence of an irresistible insane impulse, the policy was not avoided by self-destruction. (*Breasted* v. *F. L. and T. Co.*, 4 Hill, 75; 8 N. Y., 299; *Easterbrook* v. *Ins. Co.*, 54 Maine, 224; *Ins. Co.* v. *Rodel*, 5 Otto, 232, 238; *Van Zandt* v. *Ins. Co.*, 55 N. Y., 177; *Ins. Co.* v. *Terry*, 15 Wall., 580; *Ins. Co.* v. *Islett*, 74 Penn.; *Weed* v. *Mu. Ben. L. Ins. Co.*, 70 N. Y., 561; 2 Big. Ins. Rep., 31–32; *Moore* v. *Ins. Co.*, 4 Big. Ins. Rep., 169; U. S. C. C. Mo.; *Boradaille* v. *Hunter*, 5 Man. & G., 639; *Phadenhauer* v. *Ins. Co.*, 7 Heisk, 567; 5 Big. [Tenn.], 508; *Bk. of Oil City* v. *Ins. Co.*, 5 Big. [Penn.], 478; *Phillips* v. *Ins. Co.*, 27 La. Ann., 404; *Ins. Co.* v. *Peters*, 42 Md., 414.) The certificate under which the father of the insured was put in an insane asylum, and the record of the court in that regard, could not warrant a dismissal of this action; it would only have the force of *prima facie* evidence. (*Hicks* v. *Marshall*, 8 Hun, 327; *Hoyt* v. *Adee*, 3 Lans., 173; *Hart* v. *Deamer*, 6 Wend., 497; *Hutchinso* v. *Sandt*, 4 Rawle, 233; *Lancaster Bk.* v. *Moore*, 78 Penn., 414; *McGinnis* v. *Commonwealth*, 74 id., 245, 248; *McGinnis* v. *Commonwealth*, 14 Penn., 428; Wharton on Evidence, §§ 1, 254, 812; *Supervisors* v. *Budlong*, 51 Barb., 493; *Duffy* v. *People*, 6 Hill, 81; *Carroll* v. *Carroll*, 60 N. Y., 121; *Mu. Ben. L. Ins. Co.* v. *Tisdale*, 1 Otto, 238; 1 id., 344, cit.; 1 Stark Ev., 317, *m.; Williams* v. *Williams*, 3 Barb. Ch., 628; *Campbell* v. *Gordon*, 1 Otto, 245; *Erickson* v. *Smith*, 38 How. Ct. App., 454; *Jackson* v. *Randall*, 5 Cow., 168; 6 id., 316; *Tallman* v. *White*, 2 N. Y., 66; *Williams* v. *Peyton*, 4 Wheat.; *Beekman* v. *Bigham*, 5 N. Y.; *Anderson* v. *James*, 4 Robt., 35; Wharton's Law of Ev., § 810; *Simons* v. *Dabarre*, 6 Abb., 188; 4 Bosw., 547; *Ins. Co.* v. *De Wolf*, 2 Cow., 56; *Hitchcock* v. *Aiken*, 3 J. Ch., 595; *Radcliff* v. *Ins. Co.*, 69 J. R., 277.) It was incumbent on the defendant to prove that softening of the brain is insanity and is hereditary. (*Campbell* v. *Ins. Co.*, 98 Mass., 381; 1 Big., 229, 625; *Van Valkenburgh* v. *Ins. Co.*, 70 N. Y., 605.)

The answer that Benjamin Ross died of *brain disease*, caused
by a hurt, was true. If particulars were wanted, further
questions should have been propounded. (*Dilliber* v. *Ins.
Co.*, 69 N. Y., 256, 262; *Rawls* v. *Ins. Co.*, 27 id., 282.)

RAPALLO, J. We think that there was sufficient evidence,
tending to show that Henry C. Ross was insane at the time
he committed suicide, to require the submission of that ques-
tion to the jury. Without referring to the evidence in detail,
our conclusion is that although it might have required the
jury to find that Ross was aware when he took the laudanum
that it would terminate his life, yet it would also have justi-
fied a finding that he acted under the control of an insane
impulse caused by disease, and derangement of his intellect,
which deprived him of the capacity of governing his own
conduct in accordance with reason. An act committed
under such circumstances cannot be regarded as voluntary
or within the proviso of the policy. (*Gay* v. *Ins. Co.*, 2
Bigelow Rep., 4; *Van Zandt* v. *Ins. Co.*, 55 N. Y., 169, and
cases cited.)

The other branch of the defense, viz., that Ross, in his
answers contained in the application for the policy, made an
untrue statement in declaring that his father had not died of
or been afflicted with insanity, was not in our judgment
proved so conclusively as to justify the court in taking the
case from the jury. The question propounded in the appli-
cation was whether any member of his family (parents,
brothers, or sisters) had "died of or been afflicted with
insanity, epilepsy, disease of the heart, scrofula, or other
hereditary disease," which question he answered in the nega-
tive; but in the same paper he stated that his father had
died of a brain disease caused by a hurt.

The only evidence introduced by the defendant in support
of this defense consisted of copies of two entries in the
records of a probate court in the State of Ohio, one dated
July 17, 1856, and the other dated October 18, 1856, by
each of which it appeared that the probate judge had held

Benjamin Ross (the father) to be an insane person and a fit person to be sent to the Northern Ohio Lunatic Asylum and ordered him to be sent to said asylum for treatment, also extracts from the records of the asylum showing that Benjamin Ross was admitted July 17, 1855, and again on the 20th of October, 1856.

Objections were taken to the admission of these records in evidence. Without now determining whether they were properly proven, or were admissible at all, it is sufficient to say that they certainly were not conclusive evidence against the present plaintiff of the insanity of Benjamin Ross. The only other evidence upon the point consists of the testimony of the widow of Benjamin Ross.

This being a case of nonsuit, the plaintiff is entitled to the most favorable construction of her testimony of which it is capable. She testified among other things that her husband had in his childhood received an injury on the back of his head. That he was for many years before his death afflicted with pains in his head, of which he complained and used to refer to the hurt he had when he was a child; that later he showed signs of weakening of his mental powers which continued and increased until his death at the age of about forty-seven years; that he was placed in the lunatic asylum through the kindness of friends, for quiet and treatment, but while there was not confined with the patients but worked in the bakery. It does not appear that he was subject to any delusions or ever acted in an irrational manner, but that he read the newspapers and kept posted on current events. His widow testified further that he seemed sick and seemed to suffer, but that he seemed to know what was going on clear to the end; that there had been no dispute as to what was the trouble with him before he went into the asylum; that all pronounced it softening of the brain whom she heard say anything about it; that after his death an autopsy was had and the doctors pronounced his disease a hardening of the brain; that the brain was shown to her and was hard, except in one place, where it was soft, and the doctors said the

effect was the same as if he had died of softening of the brain.

Upon this evidence there was, to say the least, very slight, if any, ground for holding that the answer of the assured that his father had died of disease of the brain as distinguished from insanity, in the ordinary acceptation of the term, was not a fair and true answer, especially when the insanity inquired of in the question was classed among hereditary diseases. If there were any question upon this point it clearly was one of fact for the jury, and the mere circumstance that the deceased had been declared insane by a probate judge on an *ex parte* examination, and had been committed to an insane asylum, was clearly insufficient to warrant taking the case from the jury. If every disease of the brain sufficient to cause death was insanity in the view of the company, it was informed of the fact of such disease, and was not misled by the negative answer to the first question, and having issued the policy, and gone on more than six years receiving premiums under it, with knowledge of that fact, it cannot now set up that it constituted a breach of warranty, or misrepresentation which should free it from responsibility.

The order of the General Term should be affirmed and judgment absolute rendered for the plaintiff, with costs.

All concur, except ANDREWS, J., taking no part.

Order affirmed and judgment accordingly.