Hardest, P. J.
Upon the trial of this action the defendant relied upon several grounds to avoid its liability upon the certificate in question:
First. In answer to the inquiry whether the insured was •of temperate and correct habits, he stated, “Yes.”
Upon the subject of his habits preceding his death, a contrariety of evidence was given during the trial. Several irregularities were shown to have occurred on different •occasions. On the other hand, it was shown that his general bearing and habits were good, and the question of whether the habits of the insured were temperate and cor *328 rect was clearly presented for the consideration of the jury, their attention having been invited to the evidence on either side of the question.
An occasional use of intoxicating liquors by the insured was npt inconsistent with the answer given to the question under consideration. The question seems to refer to a habit-in the use of intoxicating liquors that was “ customary and habitual, rather than to a single or incidental one.” Van Valkenburg v. The American Popular Life Ins. Co., 9 Hun, 583; S. C., affirmed 70 N. Y., 605.
Whether the evidence established a breach or not, we think was a proper question for the jury, and their finding-upon that subject should not be disturbed by this court.
The views already expressed upon this question bear upon the second question raised in the progress of the trial as to whether the deceased remained a man of temperate and correct habits. The views we have already expressed upon the first question leads us to sustain the verdict of the jury upon the second.
The third question raised upon the trial related to an averment on the part of the defendant that the insured fraudulently concealed an intent entertained by him at the time of obtaining the insurance to commit suicide and secure for his wife the amount named in the certificate. The trial judge instructed the jury correctly upon that branch of the case. Among other things he said in his. charge to the jury, viz.: “ Did he have that fraudulent intent when he obtained it, and concealed it from the defendant ? If he had it, the evidence is that he concealed it. So-the question is, whether he obtained this insurance policy with that intent. If he did, then the plaintiff cannot recover in this action and your verdict must be for the defendant.”
We think that language fairly presented the question to the jury, and we also think the evidence given upon the trial made the question one of fact, and that it was proper to submit it to the jury, and that their finding cannot be said to be against the preponderance of evidence upon the question.
Fourth. It was urged as a defense upon the trial that the defendant’s agent was misled by the insured at the time he took the application for the insurance, by a statement that the insured was engaged in the business of a detective, and that the statement was made for the purpose of inducing the company to accept the risk, and issue the .certificate in question. Whether the representation was made in a serious manner, or whether it was a jocose remark, we think was properly a question for the jury after hearing all the testimony bearing upon the subject. *329 The defendant’s agent Miller, seems to have been anxious to obtain the risk, as insurance agents usually are. He Was ready and willing to accept of the opportunity to obtain a risk, and according to the agent’s testimony, the application was written by the agent before the remark relating to the detective business was made, and a careful reading of the testimony of Miller, the agent, leaves a reasonable doubt in our minds as to whether or not he relied upon or paid any attention to the casual remark of the insured in respect to the badge that he had pinned on his left side, and which he incidentally showed Miller, containing the word and figure, viz: “Detective, 4.” It is apparent from Miller’s testimony that after he had written the application and sent the same to the company he derived additional information in respect to the insured, and that he made no effort to revoke the application or to prevent the certificate from being issued. It was plainly for -the jury to say whether the agent was misled by any statement made by the insured in respect to his business engagements.
Fifth. We think there was no error in submitting the question to the jury as to whether the insured died from, dissipation or from the excessive use of ardent spirits, and that upon the whole evidence before the court the question was one of fact.
Sixth. The defendant insisted upon the trial that there was a breach of the certificate because the deceased committed suicide. The language used by the defendant in its by-laws is as follows: “ This association does not hold itself liable for the payment of any claim when the member has died in violation of the laws of the land * * * or from suicide, if committed within two years from the date of certificate of membership.”
It has recently been held by the third department that suicide is not a violation of the Penal Code. Darrows v. Family Fund Society, 3 N. Y. St. Rep., 745; Freeman v. The National Benefit Society of New York, 5 id., 82.
So far as it is important to pass upon the question here, we content ourselves with following these cases.
In Van Zandt v. The Mutual Benefit Life Insurance Co.. (55 N. Y., 169), it was held that to take a case out from a stipulation, essentially like the one before us, “on the ground of insanity, the insured must have been so mentally disordered as not to understand that the act that he committed would have caused his death, or he must have committed it under the influence of some insane impulse which he could not resist.”
In Newton v. The Mutual Benefit Life Insurance Co. (76 *330 N. Y., 426), it was held, viz.: “Where a person who, although aware that a certain act will terminate his life, yet ■does the act under the control of an insane impulse caused by disease and derangement of his intellect, which deprives him of the capacity of governing his own conduct in accordance with reason, the act cannot be regarded as voluntary. Such an act, therefore, is not within the provision of a policy of life insurance avoiding it in case the insured “ die by his own hand.”
We think the trial judge followed the cases to which we have alluded in laying down the law to the jury in regard to the defense insisted upon by the defendant as to suicide. We, also, think that the evidence was sufficient to warrant the jury in finding, “that he acted under the control of an insane impulse caused by disease and derangement of his intellect, which deprived him of the capacity of governing his own conduct in accordance with reason.” Rapallo, J;, in Newton v. Mutual Benefit Life Insurance Co. (supra).
It is strenuously insisted that such finding is against the evidence. It was held otherwise at the special term and we think correctly. The solution of the question turns largely upon the interpretation of the facts and circumstances attending the conduct of the deceased just before and at the time of committing suicide.
We are of the opinion that the letter of August 23, 1884, written by the deceased to his wife is strong evidence supporting the conclusion reached by the jury. In the letter the deceased says, among other things, “but this voice .says, ‘die now,’ Darling, don’t give this revolver away until Clare is big enough to take care of it, then give it to him and tell him its history. * * * Oh! that voice is calling me. I think it is mother’s. Now, darling, I bid you and all my Mends and the little darlings an affectionate farewell, forever, hoping we shall all meet in a fairer world than this where everybody is our friends. Now, wishing you all farewell, I am no more your unworthy husband but almost a corpse. Good bye, darling. Charlie E. Hay.”
What mind in a normal condition could suggest that a revolver, which was used to take the life of a parent should be preserved as a keepsake for a child of the party using it? What is there in the letter itself other than a betrayal of an insane impulse, caused by disease and derangement of an intellect, which deprived him of the capacity of governing his own conduct in accordance with reason.”
We think the jury was warranted in coming to the conclusion which it did on this branch of the case.
The learned counsel for the appellant calls our attention to Smith v. The Ætna Life Insurance Company (49 N. Y., *331 211), which declares that it is the duty of the general term to set aside a verdict which is against the clear weight of evidence.
We recognize the force of that authority, but we deem it wholly inapplicable to the case before us, as we are of the opinion that the verdict given is in keeping with the strong features of the evidence on the subject of insanity.
The trial judge correctly laid down the law with regard to this branch of the case, and gave the question cautiously ■and elaborately to the jury for its determination.
We think it the duty of this court to accept the verdict; these views lead to the conclusion that no error occurred upon the trial, or in denying the motion for a new trial made upon the judge’s minutes.
Judgment and order affirmed, with costs.
Follett, J., concurs; Martin, J., not sitting