VORIS et al. v. TEXAS EMPLOYERS INS.
ASS'N et al.

No. 13425.

United States Court of Appeals
Fifth Circuit.

July 11, 1951.

Rehearing Denied Aug. 10, 1951.

930

Leonard E. Choate, Asst. U. S. Atty., Beaumont, Tex., Herbert P. Miller, Atty., Dept. of Labor, Washington, D. C., Warren G. Moore, U. S. Atty., Tyler, Tex., Fred A. White, John T. Lindsey, Port Arthur, Tex., for appellants.

David C. Marcus, Beaumont, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge:

This appeal is from a judgment setting aside and enjoining enforcement of a compensation order of the Deputy Commissioner for the Eighth Compensation District, awarding death benefits to the widow and minor children of Arthur Heinrich under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.[1]

On October 8, 1948, Arthur Heinrich was an employee of the Burton Construction Company and engaged in the repair of the Motor Vessel Lanora, which was then upon navigable waters of the United States. On that day Heinrich suffered painful burns of the face and hands and general shock of undetermined degree as the result of an explosion aboard the vessel. Thereafter, he developed manic-depressive insanity and on May 21, 1949, shot himself. As a result of the gunshot wound, he died on June 10, 1949.

The Deputy Commissioner found that Heinrich's wound was self-inflicted with the intention of killing himself; that the act was carried out in a fit of mental despondence and depression resulting primarily from the effects of the explosion; that the act was the result of an irrational state of mind and uncontrollable impulse; and that it was not an act occasioned by the willful intention of the employee to injure or kill himself as contemplated by section 3(b) of the Act.

Pursuant to these findings, the Deputy Commissioner entered an award which directed the employer and its insurance carrier, Texas Employer's Insurance Association, to pay compensation to the widow and minor children of the deceased, as well as certain hospitalization expenses and expenses attendant upon the burial of the deceased. Thereupon, the employer and its insurance carrier brought this action in the court below under the provisions of Section 21(b) of the Act to set aside and enjoin the enforcement of the award. The District Court, after reviewing the record made before the Deputy Commissioner, found that the award was not in accordance with law and was wholly unsupported by the evidence. Judgment was accordingly entered, setting aside and enjoining its enforcement.

The crucial and controlling question presented by this appeal is whether there is

1. Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq.

legal and factual support[2] for the Deputy Commissioner's conclusion that the deceased's act was not the result of a willful intention to kill himself within the meaning of section 3(b) of the Statute. This section provides that, "No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

In considering a compensation order a reviewing court must look to see whether it is forbidden by law, or is without reasonable legal basis. Our first inquiry, therefore, is whether there is a reasonable legal basis for the Deputy Commissioner's action.

In construing insurance policies excluding recovery for death by suicide, it is the established rule of the Supreme Court that if one whose life is insured intentionally kills himself when his reasoning faculties are so far impaired by insanity that he is unable to understand the moral character of his act, even if he does understand its physical nature, consequences, and effects, it is not a "suicide" or "self-destruction" within the meaning of those words in a clause excepting such risks from the coverage of the policy. Connecticut Mutual Life Ins. Co. v. Akens, 150 U.S. 468, 473, 14 S.Ct. 155, 37 L.Ed. 1148. In the early case of Mutual Life Ins. Co. v. Terry, 15 Wall. 580, 21 L.Ed. 236, the court said, "If the assured, being in possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable." The cited cases clearly draw a distinction between the intention of a person in possession of his ordinary reasoning faculties and the intention of a person whose reasoning faculties are sufficiently impaired. A similar distinction should be and has been drawn under section 3(b) of the Act between a willful intention of the employee to kill himself and an act of self-destruction which, because of his mental condition due to insanity, is not willful.

So far there is no difficulty. The difficulty arises in determining the meaning of the word "insanity" to be applied in a particular situation. In Delinousha v. National Biscuit Co., 248 N.Y. 93, 161 N.E. 431, 432, a case involving the question whether, under Sec. 10 of the New York Workmen's Compensation law, Consol. Laws, c. 67, the provisions of which are in substance identical with those contained in Section 3(b) of the Act, death benefits might be awarded if an injury causes insanity, which in turn causes suicide, the court refers to this difficulty. "It may be said safely that insanity is a symptom of some functional derangement of tissues of the brain. As this derangement is more or less deep seated, so the resulting symptoms are more or less profound. The legal effect differs under varying circumstances. Insanity for one purpose may not be insanity for another. * * *"

Then presenting instances, including the instance of the enforcement of a policy of insurance excepting death by suicide if the insured kills himself while insane, the court proceeds:

"Here, however, there is no agreement as to the precise meaning of the word—the extent of the mental deficiency which it connotes. In some courts it means inability to recognize the physical nature of the act. Cooper v. Mass. Mut. Life Ins. Co., 102 Mass. 227, 3 Am.Rep. 451. In others, unconsciousness that the act will cause death, or the presence of an irresistible insane impulse. Van Zandt v. Mutual Ben. Life Ins. Co., 55 N.Y. 169, 14 Am.Rep. 215. Still elsewhere such an impairment of reason

2. Cardillo v. Liberty Mutual Co., 330 U.S. 469, 479, 67 S.Ct. 801, 91 L.Ed. 1028.

that, while the act is intentional and voluntary, the insured still does not understand its moral quality and its general nature or effect, or where an irresistible impulse is present. Conn. Mut. Life Ins. Co. v. Akens, 150 U.S. 468, 14 S.Ct. 155, 37 L.Ed. 1148. And again the absence of criminal intent—of an evil motive. Eastabrook v. Union Mutual Life Ins. Co., 54 Me. 224, 89 Am.Dec. 743.

"The New York rule, a compromise between the two extreme views, and formulated in the Van Zandt Case, 55 N.Y. 169, 14 Am.Rep. 215, has been followed here. Newton v. Mutual Ben. Life Ins. Co., 76 N.Y. 426, 32 Am.Rep. 335; Penfold v. Universal Life Ins. Co., 85 N.Y. 317, 39 Am.Rep. 660; Meacham v. N. Y. State Mutual Ben. Assn., 120 N.Y. 237, 24 N.E. 283. In Newton v. Mutual Ben. Life Ins. Co., Judge Rapallo restates it. If, he says, the insured 'acted under the control of an insane impulse caused by disease, and derangement of his intellect, which deprived him of the capacity of governing his own conduct in accordance with reason,' the suicide is not a voluntary act."

Turning to the precise question before us, the court concludes: "While helpful, the decisions as to insurance policies are not strictly analogous to claims arising under the Workmen's Compensation Law. The courts there are attempting to decide the meaning of an ambiguous clause in a contract. What was the intent of the parties. But here we deal with a statute intended to redress the incidence of that economic loss inevitable in industry. It is to be construed liberally. Death benefits are allowed if the injury results naturally and unavoidably in disease, and the disease causes death. *This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity directly causes suicide; in other words, if the suicide is not the result of discouragement, of melancholy, of other sane conditions, but of brain derangement. If that is the cause, an award may be made. Death is then the proximate and direct result of the accident within the meaning of the statute."* (Emphasis supplied.)

In 71 C.J. 638, the generally accepted view of the law of the American cases where, as here, it is claimed that insanity, meaning thereby some form of mental derangement, has deprived the act of willful intention, is thus summarized: "Provided the insanity results from a compensable accident and not from a brooding over the injury or other causes, the suicide of an employee while insane may entitle his dependents to compensation therefor; thus, where there follows as a direct result of the accident an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death, there is a direct and unbroken causal connection between the physical injury and the death; however, where the suicide is the result of voluntary and willful choice determined by a moderately intelligent mental power with knowledge of the purpose and effect of the act, even though dominated by a disordered mind, a new and independent agency breaks the chain of causation."

58 Am.Jur., Workmen's Compensation, Sec. 262, Suicide, is to the same effect.

In a note to Barber v. Burrell Engineering Co., 241 Wis. 462, 6 N.W.2d 199, 143 A.L.R. 1227, the rule is stated thus: "The American cases generally have adopted the rule that where insanity and suicide follow an injury to a workman which was otherwise compensable, compensation may be awarded if he took his own life through an uncontrollable impulse, or in a delirium of frenzy, and without volition to cause death, since, under such circumstances, there was a direct and unbroken causal connection between the injury and the suicide and no intervening cause."

Citing in support of this view Delinousha v. National Biscuit Co., supra, the editor of the note continues: "But under the American rule where the resulting insanity following an injury is such as to cause suicide through a voluntary willful choice determined by a moderately intelligent mental power which knows the purpose and physical effect of the suicidal act, even though the choice is dominated by a dis-

ordered mind, there is a new and independent agency which breaks the chain of causation arising from the injury, and no compensation can be had."

Many cases are cited and many more may be to the same general effect, including one from Texas, Jones v. Traders & General Insurance Co., 140 Tex. 599, 169 S.W.2d 160.

Appellant not disputing this statement of the general American rule, but denominating it the Massachusetts Rule, and insisting that it was over harsh in its origin and has been increasingly harshly applied, cites cases opposed to this rule from other states, including Whitehead v. Keen Roofing Co., 43 So.2d 464, 465, from Florida, and the Delinousha case, and invokes the decisions under the English Workmen's Compensation Act, and the amendment of the Mass. statute as supporting a more liberal rule.

Appellee, on its part, points out that in the Whitehead case, relied on by appellant, the court said: "In the instant case, the evidence showed that the deceased was not only suffering from a mental disturbance at the time he took the poison but that he was, to use his own expression, 'nuts.' Certainly, if his action in taking the poison was the result of an uncontrollable impulse or in a delirium or frenzy, it could not be said that he was capable of forming a wilful intention to take his own life." while in the Delinousha case [248 N.Y. 93, 161 N.E. 432], it was declared: "Death benefits are allowed if the injury results naturally and unavoidably in disease, and the disease causes death. This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity directly causes suicide; in other words, if the suicide is not the result of discouragement, of melancholy, of other sane conditions, but of brain derangement."

As to the English rule, appellee quotes Schneider on Workmen's Compensation as

stating: "Apparently under the English decisions the fact of insanity presupposes a lack of knowledge of the physical consequences of the suicidal act, sufficient to make it an independent intervening cause or a deliberate attempt on the part of the employee to injure himself. * * * Insanity is not to be inferred merely from the fact that a workman who had received an injury to his eye and was suffering great pain, committed suicide, although there was no other reason advanced for the act except the injury." while, as to the American rule, it quotes this from Schneider: "When insanity and suicide follow an industrial injury, the rule of compensability generally followed in the American cases is that quoted hereinafter from the Mass. case of In re Sponatski, 220 Mass. 526, 108 N.E. 466, L.R.A.1916A, 333." (then follows the statement of the so-called Massachusetts rule).

In this situation, the commissioner having made findings as to the extent of the insanity which would support liability under either interpretation put forward, we find it unnecessary at this time to determine the extent of the conflict claimed to exist in the decisions and to undertake to lay down a general rule of construction which will fit all cases. It is sufficient for the court to point out, as we have done, the general state of the authorities, that the findings are sufficient to sustain liability under either claim, and then to proceed to determine whether the findings are supported by substantial evidence in the record considered as a whole.

It is not, however, inappropriate to say that the provision of the act under constructions here follows, with slight difference the New York State Compensation Law,[3] and, though the Delinousha case was decided after the passage of the Federal Act and therefore is not particularly persuasive in determining historically the congressional intent,[4] it would still be entitled to most respectful consideration.

3. H.Rep. 1422, 75th Cong. 1st Sess.; Hartford Acc. and Indemn. Co. v. Hoage, 66 App.D.C. 154, 85 F.2d 411, 413; Lawson v. Suwanee Fruit & S. S. Co., 336 U.S. 198 at page 205, 69 S.Ct. 503, 93 L.Ed. 611; Branham v. Terminal, 4 Cir., 136 F.2d 655; Case v. Pillsbury, 9 Cir., 148 F.2d 392.

4. Twin Harbor Stevedoring & Tug v. Marshall, 9 Cir., 103 F.2d 513, 516.

Compensation, as we have held, is payable *under the Act irrespective of fault as a cause of the injury and the concept of independent,* intervening cause as that concept is applied in the *law of torts.* (Emphasis supplied.) Southern Stevedoring Co. v. Henderson, 5 Cir., 175 F.2d 863. There must, however, under the Act, be some connection between the death and the employment, and the causal effect attributable to the employment must not have been overpowered and nullified by influences originating entirely outside the employment. Hartford Acc. & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 17. That the Congress so intended is clearly disclosed by the Act's explicit provision that "No compensation shall be payable if the injury was occasioned solely by the * * * willful intention of the employee to injure or kill himself." (Emphasis supplied.)

The scope of judicial review of the Deputy Commissioner's findings of fact is governed by the Administrative Procedure Act, of June 11, 1946, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq. O'Leary v. Brown, 340 U.S. 504, 71 S.Ct. 470. The standard is that discussed in Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456. It is sufficiently described, for present purposes, by saying that the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole.

We are satisfied that the record supports the Deputy Commissioner's findings. Prior to the accident Heinrich was a healthy person and a steady worker but following his release from the hospital he suffered from nervousness and anxiety to such an extent that he was unable to work for any considerable period of time. He lost interest in social contacts, was unable to sleep, lost his appetite, and was subject to crying spells; he sometimes talked in an irrational manner and was always worrying about his physical condition. About April 1, 1949, Heinrich visited Dr. Eisenstadt for a complete physical examination, which included psychiatric consultations. At the time, Dr. Eisenstadt found the patient's greatest disability to be of a psychiatric nature commencing immediately following psychic trauma sustained during the explosion, the symptoms being depression and moodiness which had on many occasions terminated in crying spells. The doctor testified that the patient's psychogenic symptoms along with his traumatic complaints pointed to an emotional disturbance of a depressive nature of a very high degree, and that he predicted Heinrich would probably commit suicide if he did not receive proper medical treatment. Dr. Eisenstadt was of the opinion that Heinrich was suffering from manic-depressive insanity at the time when he examined him and that this abnormal mental condition was caused by the industrial accident. Doctor Harris, a witness for the employer, examined Heinrich in March 1949 and again on April 21, 1949, and found the patient suffering from a depressive illness. He was of the opinion that Heinrich's failure to go back to work indicated a continuing depression; that the explosion aboard the vessel Lanora precipitated the mental condition and that it was a suicide resulting from the depression.

There was substantial medical evidence to the effect that a person suffering from depressive insanity is not completely in control of his mental faculties; that there is a lack of ability to judge a situation properly and see things as they really are; that such persons have no restrictions to a certain extent, do not consider their family and friends and do not have any religious consideration; that although the depressed person is perfectly aware that his suicidal act will produce death, the choice to kill himself is not entirely voluntary; and that such a person, in this abnormal mental condition, would be psychiatric and committable.

From the foregoing the Deputy Commissioner could reasonably find that the accident and injury caused the manic-depressive insanity; that this abnormal mental condition caused the deceased to take his own life; and that his reasoning faculties were so far impaired that his act of self-destruction was not voluntary and willful

within the meaning of section 3(b) of the Act.

On this record, we hold that the decision of the District Court that the award should be set aside should not be sustained.

Reversed.