TERMINAL SHIPPING COMPANY and
Merchants Mutual Insurance Co.

v.

John P. TRAYNOR, Deputy Commissioner, U. S. Department of Labor, and Emeline Connelly, widow of Michael Connelly, deceased.

Adm. No. 4819.

United States District Court
D. Maryland.

Aug. 4, 1965.

Emanuel H. Horn, Andrew J. Krug and Dickerson, Nice & Sokol, Baltimore, Md., for employer and insurance carrier.

Thomas J. Kenney, U. S. Atty., and Joseph H. H. Kaplan, Asst. U. S. Atty., Baltimore, Md., and Neil R. Peterson, Atty., Dept. of Labor, Washington, D. C., for deputy commissioner.

Maurice J. Pressman, Baltimore, Md., for claimant.

THOMSEN, Chief Judge.

The employer and its insurance carrier challenge a compensation award to the widow of Michael Connelly under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

The Deputy Commissioner found that on 27 January 1961, while Connelly was engaged as a longshoreman unloading a vessel which was afloat in the Patapsco River, he sustained an injury, a cerebral hemorrhage, precipitated by strenuous effort. An award for temporary total disability was made, and compensation was paid thereunder until Connelly's death by suicide on 7 September 1963. After a hearing, the Deputy Commissioner made an award to Connelly's widow, in which he found: " * * * that as a result of the injury sustained on 27 January 1961 decedent sustained physical impairment and subsequent mental depression; that as a result of the injury and the residual physical and mental impairment resulting therefrom he was unable to control an impulse to end his own life, which impulse was carried through to completion on 7 September 1963; that the impulse to end his life germinated from the injury and the resultant physical and mental impairment produced thereby * * *." The employer and the carrier contend that if the proper

legal rule is applied, the award to the widow is not supported by substantial evidence in the record considered as a whole.

The proper legal rule in such a case as this has been the subject of many State court opinions, which are discussed in the two opinions in Trombley v. State, 366 Mich. 649, 115 N.W.2d 561 (1962). One line of decisions, based on Sponatski's Case, 220 Mass. 526, 108 N.E. 466, L.R.A.1916A, 333 (1915), permits recovery only when the mental disorder was so violent that the victim committed suicide "through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death'". Compensation is barred, on the other hand, when suicide is a "voluntary willful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act even though choice is dominated and ruled by a disordered mind". Ruschetti's Case, 299 Mass. 426, 13 N.E.2d 34 (1938).

The other line, of which Harper v. Industrial Commission, 24 Ill.2d 103, 180 N.E.2d 480 (1960), is representative, allows compensation upon a showing of causal connection between the decedent's employment, his injury or mental disorder and his suicide. This approach regards such suicide as a compensable consequence of a work-connected injury or mental disorder, not as an intervening cause of death. It also obviates the necessity for assessing the "precise quality" of the decedent's mental condition at the moment of suicide to the extent required by Sponatski. In those states which have statutory provisions barring recovery of compensation if injury or death results from intentional or willful action by the decedent employee, "the decedent's mental derangement need only be found to have so impaired his reasoning faculties that his act of suicide was not voluntary in the sense that term is used to describe rational choice of alternatives". Trombley v. State, supra, 115 N.W.2d at 568.

The Longshoremen's and Harbor Workers' Compensation Act contains such a provision. Sec. 3(b), 33 U.S.C.A. 903(b). In Voris v. Texas Employers Ins. Ass'n, 5 Cir., 190 F.2d 929 (1951), the only federal case cited or found which deals with the precise problem, the Court discussed that section and decisions applying it in other types of cases, as well as old federal life insurance cases and many state compensation cases theretofore decided, but did not adopt or formulate any general rule. After noting that the Deputy Commissioner's "findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole," O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951), the Fifth Circuit summarized the evidence and concluded: "From the foregoing the Deputy Commissioner could reasonably find that the accident and injury caused the manic-depressive insanity; that this abnormal mental condition caused the deceased to take his own life; and that his reasoning faculties were so far impaired that his act of self-destruction was not voluntary and willful within the meaning of section 3(b) of the Act." 190 F.2d at 934, 935.

An attempt to reconcile the legal term "insanity" with the various medical terms used by psychiatrists and other medical doctors is likely to be fruitless. It is sufficient for the purposes of our case to say that if the injury caused a mental disease or defect which in turn was responsible for Connelly's impulse to take his own life and so far impaired his ability to resist that impulse that he was in fact unable to control it, and so took his own life, his suicide was not willful within the meaning of section 3(b), 33 U.S.C.A. 903(b), but was the result of his original injury, and therefore compensable under the Act.

The evidence in this case includes the testimony of the widow, of two attending physicians, one of whom was an able neurologist engaged by the carrier, and of three psychiatrists, each of whom answered the same hypothetical question,

one favorably to the claimant and two adversely. A suicide note which the decedent left indicates clearly that his suicide was intentional. But it is not conclusive on the issue of willfulness. The testimony of the widow and of the two attending physicians, even if we disregard the testimony of the one psychiatrist favorable to the claimant, fully supports the finding of the Deputy Commissioner that the injury caused physical and mental impairment, from which Connelly's impulse to end his own life germinated, and which rendered him unable to resist that impulse.

The Court cannot say that those findings are unsupported by substantial evidence on the record considered as a whole. Applying to those facts the proper legal test, set out above, which appears to have been the test applied by the Deputy Commissioner, this Court concludes that the suicide was not voluntary and willful within the meaning of sec. 3(b), 33 U.S.C.A. 903(b), but was a result of the original injury and the physical and mental impairment resulting therefrom, and that the award of compensation should be and it is hereby confirmed.