**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM B. KEALOHA,<br>*Petitioner*,<br><br>v.<br><br>DIRECTOR, OFFICE OF WORKERS<br>COMPENSATION PROGRAMS; U.S.<br>DEPARTMENT OF LABOR; LEEWARD<br>MARINE; HAWAI'I EMPLOYERS'<br>MUTUAL INSURANCE CO.,<br>*Respondents*. | No. 11-71194<br><br>BRB No.<br>10-0468<br><br>OPINION |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
October 16, 2012—Honolulu, Hawaii

Filed April 9, 2013

Before: Stephen Reinhardt, Sidney R. Thomas,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Thomas

## SUMMARY[*]

### Longshore Act

The panel granted a petition for review of a decision of the Benefits Review Board that denied benefits under the Longshore and Harbor Workers' Compensation Act.

The panel held that a suicide, or injuries from a suicide attempt, are compensable under the Longshore Act when there is a direct and unbroken chain of causation between a compensable work-related injury and the suicide attempt. The panel held that the claimant need not demonstrate that the suicide, or attempt, stemmed from an irresistible suicidal impulse. The panel concluded that the administrative law judge (ALJ) erroneously applied the irresistible impulse test, and remanded for the Benefits Review Board to apply the chain of causation test or to remand to the ALJ so that the ALJ may have the first opportunity to do so.

## COUNSEL

Joshua T. Gillelan, II (argued), Longshore Claimants' National Law Center, Washington, D.C.; Jay L. Friedheim, Honolulu, Hawaii, for Petitioner.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Thomas C. Fitzhugh III (argued) and Nicholas W. Earles, Fitzhugh & Elliott, P.C., Houston, Texas, for Respondents Leeward Marine, Inc. and Hawai'i Employers' Mutual Insurance Co.

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider the circumstances under which a suicide may be compensable under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. We hold that evidence that a claimant planned his suicide does not necessarily preclude compensation under the Act because the proper inquiry is whether the claimant's work-related injury caused him to attempt suicide. We therefore grant the petition for review and remand for further proceedings. On remand, the question is whether there is a direct and unbroken chain of causation between the claimant's work-related injury and his suicide attempt. We need not and do not reach any other issues urged by the parties.

## I

In 2001, while working as a ship laborer, William Kealoha fell about 25 to 50 feet from a barge to a dry dock, landing on a steel floor. He suffered blunt trauma to the head, chest, and abdomen; a fractured rib and scapula; and knee and back pain. Kealoha later resumed work at his employer, Leeward Marine Inc., but after a while, left Leeward. He filed a workers' compensation claim under the Longshore Act for the injuries from his fall.

In 2003, Kealoha shot himself in the head, causing severe head injuries. He sought compensation for these injuries under the Longshore Act, alleging his suicide attempt resulted from his 2001 fall and the litigation over that claim. In support, he offered the testimony of an expert psychiatrist, Dr. David Roth, who diagnosed Kealoha with, *inter alia*, major depressive disorder due to multiple traumas and chronic pain, post-traumatic stress disorder, and a cognitive disorder. Dr. Roth opined that chronic pain from the fall and stress from the resulting litigation caused Kealoha to become increasingly depressed, angry, and anxious, and worsened his already poor impulse control such that he impulsively attempted suicide.

An administrative law judge (ALJ) denied Kealoha's claim for benefits. The ALJ found that Kealoha's suicide attempt was not the "natural and unavoidable" result of his fall because other, more significant factors led to the attempt. Alternatively, the ALJ found that Kealoha's injuries were not compensable because Section 3(c) of the Act precludes compensation for an injury "occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another." 33 U.S.C. § 903(c). The Benefits Review Board has recognized an exception to this provision, holding that when a worker's suicide attempt results from an "irresistible impulse" caused by a work-related injury, Section 3(c) does not bar compensation because such a suicide attempt is not "willful" under the Act. But the ALJ found that Kealoha's suicide attempt did not fall within this exception. The ALJ disbelieved Dr. Roth's testimony and instead credited the testimony of Leeward's retained expert, Dr. George Bussey, who opined that the suicide attempt was not an episode of "impulse dyscontrol." That testimony, the ALJ held, was

consistent with evidence that Kealoha planned his suicide attempt.

The Board reversed.  It held that instead of applying the "naturally and unavoidably" standard, the ALJ should have afforded Kealoha a presumption under 33 U.S.C. § 920(a) that his suicide attempt was causally related to his fall. Additionally, the Board held that the ALJ erred by failing to address whether Kealoha's illness was "so severe that he was unable to form the willful intent to act."  The Board instructed the ALJ that "planning of the claimant's suicide attempt alone is not enough to show 'willful' intent."

On remand, the ALJ held that Kealoha established that his fall was a cause of his suicide attempt, and that Leeward failed to rebut this presumption.  She noted that even Leeward's expert, Dr. Bussey, acknowledged that the stress caused by Kealoha's upcoming deposition was "a contributing factor" to the stress Kealoha was experiencing at the time of his suicide attempt.

Nevertheless, the ALJ found that compensation was barred because Kealoha's suicide was "intentional" and not the result of an "irresistible impulse."  The ALJ found that Kealoha spoke about committing suicide the night before, made comments to his wife the morning of his suicide attempt that indicated he was thinking about suicide, and threatened to commit suicide six hours before he actually shot himself.  The ALJ found that Kealoha's actions were "consistent with a planned, and intentional action," and therefore his suicide attempt could not have been the result of an irresistible suicidal impulse.  The Board affirmed.

## II

Kealoha argues that the ALJ and Board should have assessed whether Kealoha's fall caused his suicide, rather than whether his fall led Kealoha to attempt suicide out of an "irresistible impulse."  We agree.

Despite the Longshore Act's provision precluding compensation for injuries caused by an employee's "willful intent to injure or kill himself," 33 U.S.C. § 903(c), other courts have held that the Act does not necessarily preclude compensation for a suicide caused by a compensable work-related injury. *See Voris v. Tex. Emp'rs Ins. Ass'n*, 190 F.2d 929, 934–35 (5th Cir. 1951) (holding suicide was compensable despite the "willful intent" language of Section 3(c), then 3(b)); *Terminal Shipping Co. v. Traynor*, 243 F. Supp. 915 (D. Md. 1965).[1]  Likewise, though many state workers' compensation laws contain a provision similar to the Longshore Act's precluding compensation for injuries that are purposely or willfully self-inflicted, most state courts have interpreted those provisions to allow compensation for some suicides, including work-related suicides. *See* Leslie A. Bradshaw, Annotation, *Suicide as compensable under*

---

[1] Because Kealoha has alleged that his suicide attempt resulted from a compensable work-related injury, we need not decide whether the Longshore Act permits compensation for a suicide resulting directly from work, without any primary injury. *See* Arthur Larson & Lex K. Larson, 2 Larson's Workers' Compensation Law § 38.04 (2011); *Dir., Office of Workers' Comp. Programs v. Cooper Assoc. Inc.*, 607 F.2d 1385, 1387–88 (D.C. Cir. 1979) (per curiam) (upholding compensation award under Longshore Act to employee who became depressed and committed suicide following business decline).

*workmen's compensation act*, 15 A.L.R.3d 616 § 3(a) (1967).**[2]**

Kealoha and Leeward agree that despite Section 3(c), some suicides are compensable under the Longshore Act. But they disagree on the proper test to determine a compensable suicide. Leeward argues that the ALJ applied the correct test, while Kealoha argues that the ALJ improperly assumed that because Kealoha planned his suicide, it was not compensable.

States have adopted one of two tests to determine whether a suicide is compensable under their workers' compensation laws: the irresistible impulse test or the chain of causation test. The chain of causation test conditions compensation on "the existence of an unbroken chain of causation from the injury to the suicide." Arthur Larson & Lex K. Larson, 2 Larson's Workers' Compensation Law § 38.03 (2011); *see also* Bradshaw, *supra*, 15 A.L.R.3d 616 § 5(a) ("The 'chain-of-causation rule,' succinctly stated, is that where the injury and its consequences directly result in the workman's loss of normal judgment and domination by a disturbance of the mind, causing the suicide, his suicide is compensable."). These states have held that if this chain of causation test is met, the suicide is the product of the work-related injury, and

---

[2] State workers' compensation laws are relevant here because Congress passed the Longshore Act to provide workers' compensation for maritime workers who could not be covered by state workers' compensation laws. *See* H.R. Rep. No. 69-1767, at 20 (1927) (noting that the law will afford maritime workers "the same remedies that have been provided by legislation for those killed or injured in the course of their employment in nearly every State in the Union"); S. Rep. No. 69-973, at 16 (1926) ("If longshoremen could avail themselves of the benefits of State compensation laws, there would be no occasion for this legislation . . . .").

thus not "willful" under their laws.  *See, e.g.*, *Petty v. Assoc. Transp., Inc.*, 173 S.E.2d 321, 329 (N.C. 1970) ("[A]n employee who becomes mentally deranged and deprived of normal judgment as the result of a compensable accident and commits suicide in consequence does not act wilfully within the meaning of [N.C. Gen. Stat.] § 97-12.").

In contrast, under the irresistible impulse test, an injury is compensable only if a work-related injury causes insanity such that the employee takes his life "through an uncontrollable impulse or in a delirium or frenzy 'without conscious volition to produce death, having knowledge of the physical consequences of the act . . . .'" *In re Sponatski*, 108 N.E. 466, 468 (Mass. 1915), *superseded by statute*, Mass. Gen. Laws ch. 152, § 26A (1937).  States applying the irresistible impulse test tended to compensate suicides "marked by some violent or eccentric method of self-destruction, while the noncompensable cases usually present a story of quiet but ultimately unbearable agony leading to a solitary and undramatic suicide." Larson & Larson, *supra*, § 38.02.

The irresistible impulse test was once the "prevailing rule." *See Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993).  But in recent years, states have abandoned that test, refused to adopt it, or interpreted the test to resemble—in practice—a chain of causation test.  *See* Larson & Larson, *supra*, §§ 38.01, 38.02.  These states have found that the chain of causation test better "accord[s] with principles of modern medicine." *Vredenburg v. Sedgwick CMS*, 188 P.3d 1084, 1090 (Nev. 2008); *see also Kostelac*, 497 N.W.2d at 856 (noting "society's heightened understanding of mental illness" has led most states to switch to chain of causation test); *Borbely v. Prestole Everlock, Inc.*, 565 N.E.2d 575, 579

(Ohio 1991) (finding chain of causation test "more logical and enlightened"). As these states recognize, whether an employee committed or attempted suicide in a "delirium or frenzy" has no bearing on whether a work-related injury caused the suicide. *See Borbely*, 565 N.E.2d at 578 ("In our view, simply because a person is capable of having a fixed purpose to commit suicide does not necessarily mean that the resulting suicide is voluntary.").

Only the Fifth Circuit and District of Maryland have considered the suicide provision of the Longshore Act. The Fifth Circuit found it unnecessary to determine the proper test because the suicide in question was compensable under any test. *Voris*, 190 F.2d at 933. The District of Maryland, while claiming not to endorse a test, appeared to apply the chain of causation test because the court upheld a compensation award though the employee wrote a suicide note. *Traynor*, 243 F. Supp. at 916–17.

Given the best-reasoned modern trend of case law, we hold that a suicide or injuries from a suicide attempt are compensable under the Longshore Act when there is a direct and unbroken chain of causation between a compensable work-related injury and the suicide attempt. The claimant need not demonstrate that the suicide or attempt stemmed from an irresistible suicidal impulse. The chain of causation rule accords with our modern understanding of psychiatry. It also better reflects the Longshore Act's focus on causation, rather than fault. *See* 33 U.S.C. § 904(b) ("Compensation shall be payable irrespective of fault as a cause for the injury.").

In this case, the ALJ erroneously applied the irresistible impulse test and concluded that because Kealoha planned his

suicide, he could not have committed suicide impulsively. But under the correct chain of causation test, a suicide may be compensable even if it is planned. Kealoha need not demonstrate that he attempted to end his life in a delirium or frenzy. Accordingly, we remand for the Board to apply the chain of causation test or to remand to the ALJ so that she may have the first opportunity to do so.

**PETITION GRANTED and REMANDED.**